UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| CHARLES WILLIAMS, | ) | |
| | ) | |
| Plaintiff | ) | |
| , | ) | |
| | ) | Case No |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| COLORADO DEPARTMENT | ) | |
| OF CORRECTIONS | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT AND REQUEST FOR RELIEF**

Plaintiff Charles Williams brings this Complaint against the Colorado Department of Corrections under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *et seq*, and the Rehabilitation Act ("RA"), 29 U.S.C. § 701 *et seq*. He alleges as follows:

## INTRODUCTION

1. Charles Williams is a prisoner who was forced to perform work his disability did not allow him to do and punished when he failed. This punishment was knowing disability discrimination by the Colorado Department of Corrections.

## PARTIES

2. Plaintiff Charles Williams is a citizen of the United States and a resident of the State of Colorado. As of the filing of this Complaint, Mr. Williams is incarcerated at Buena Vista Correctional Complex.

3. Defendant Colorado Department of Corrections (CDOC) is a Colorado State agency that enforces the laws and regulations applicable to Colorado State prisons.

4. Defendant CDOC is a public entity covered by the ADA and a recipient of federal funds within the meaning of Section 504 of the RA.

5. Defendant CDOC is statutorily responsible for the confinement and habilitation of individuals placed in state correctional facilities and for their programming, supervision, and conditions of confinement.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1331, which gives district courts original jurisdiction over all civil actions arising under the laws of the United States. Specifically, Plaintiff's causes of action seek to redress deprivations of his rights pursuant to the ADA and the RA.

7.  Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Colorado where Defendant may be found.

8.  If successful, Williams is entitled to costs and attorneys' fees under 42 U.S.C. §12205 and 29 U.S.C. § 794a(b).

## FACTS

9.  Charles Williams has throughout the relevant events described below been incarcerated at the Buena Vista Correctional Complex of the Colorado Department of Corrections.

10.     Mr. Williams has long suffered from chronic back pain and bilateral peripheral neuropathy that places substantial limitations on many of his major life activities, including walking, standing, bending, and climbing.

11. On October 4, 2018, medical staff member Heather Damon provided Mr. Williams with several work and housing restrictions targeted at

addressing his disability, these included: "No standing over 2 hours" because of "bilateral peripheral neuropathy"; "No Repetitive Bending at the Waist" because of "chronic back pain"; and a lower bunk restriction due to "peripheral neuropathy secondary to back pain."

12. In the summer of 2019, Williams was nonetheless assigned to the kitchen, an assignment that requires standing for over two hours and repetitive bending, although he was physically incapable of working there. He was assigned there by Major Hansen, who was retaliating against him for filing a lawsuit against the facility.

13. He was told to report to work on July 13, 2019. He was, however, physically unable to perform the work at the kitchen. He therefore sought and received a "lay in," which is a medical request that excuses a prisoner from conducting an official activity. He was "laid in" for forty-seven days before being relieved of kitchen duty for medical reasons.

14. In September 2019, he was again assigned to work in the kitchen.

15. Williams filed multiple grievances as well as "kites" to his case manager explaining that he was not physically capable of working in the kitchen. He was told that the kitchen would accommodate his disabilities.

16. Mr. Williams asked to be given the form to request a disability accommodation and asked to speak with the staff member who determined whether he would be able to have his disabilities accommodated while working in the kitchen. Staff did not provide him the form and did not put him in touch with the disability coordinator.

17. Mr. Williams began reporting to the kitchen, and, upon reporting, would each day provide his list of working restrictions. Each day, upon seeing his list of restrictions, staff in the kitchen sent him back to his cell without having worked. They made comments after seeing his restrictions including "why did they hire you, you can't work here."

18.     After approximately two weeks, the staff at the kitchen stopped

even examining his work restrictions but as soon as they saw him

entering the kitchen area, would wave him away, back to his cell.

19. On Saturday, September 21, 2019 he put in a medical emergency

request because his back pain was unusually bad. As usual, he

reported to the kitchen and was waved away.

20.     The following day, Sunday, September 22, 2019 he again put in

a medical emergency request because of his back pain. He again

reported to the kitchen and was waved away.

21. The following day, Monday September 23, 2019, he again put in a

medical emergency. Because Mr. Williams knew that he would see the

doctor that day who would provide him a medical lay-in and therefore

he did not go through the formulaic act of reporting to the kitchen

only to be waved away.

22.     He saw medical staff member Heather Damon on Monday,

September 23 who provided him with a medical lay-in. She told him,

however, that as a member of the medical staff, she could not require them to stop assigning him to the kitchen as this was not a decision medical staff made. Her judgment was that he should not be working in the kitchen but told Williams she did not have the power to stop it.

23.     Under AR 750-01, a Colorado state regulation concerning offender assignment and pay, clinical services are the only ones allowed to say if an offender can gainfully or safely perform the duties of a specific assignment. This rule is not applied at Buena Vista Correctional Facility.

24.     During his lay-in, an officer approached him and told him that he understood that Mr. Williams had had a medical emergency and received a lay-in so he would have no complications from not reporting to the kitchen.

25.     Also during his lay in, a staff member in the kitchen, Captain Maples, informed Mr. Williams he was going to have him released from the kitchen for medical reasons.

26.     Nonetheless, three days after the lay-in, an officer wrote a grievance against Mr. Williams for failure to work on the 23rd and had him fired from the kitchen.

27.     The grievance against Mr. Williams for failure to work triggered a reclassification so that he was no longer a "medium custody" prisoner and instead a "close custody" prisoner with an accompanying loss of privileges and autonomy.

28.     Mr. Williams filed an appeal to his grievances concerning his kitchen assignment.

29.     Officer Coleman informed him that the lay-in did not excuse his failure to work on September 23, 2019 because he failed to report to work in the morning but did not get a lay-in until several hours later.

30.     Mr. Williams, despite requesting one, never received a form to even request ADA accommodations for his work in the kitchen until after he had already been reclassed to close custody.

31. Among the privileges Mr. Williams lost as a result of being reclassified to close custody is significantly less recreation time. As a result, Mr. Williams has less time to do exercises he was medically prescribed to do to lessen his back pain.

32.    This lessened recreation caused Mr. Williams physical injury by subsequent and exacerbated back pain.

## EXHAUSTION

33.    CDOC has a three-step grievance procedure

34.    Mr. Williams filled out step 1, step 2, and step 3 grievances regarding CDOC's failures to have his disabilities accommodated regarding his kitchen work assignment or even provided a form for requesting disability accommodation.

35.    All three grievances were denied.

36.     With the denial of the final grievance, Grievance Officer

Anthony DeCesaro acknowledged that Williams had completed the

grievance process and exhausted his administrative remedies.

## CLAIMS FOR RELIEF

### Count I – Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*
*Intentional Discrimination Against and Failure to Accommodate Mr. Williams for Not Performing Work He Was Physically Unable to Do*

37.     Plaintiff incorporates all preceding paragraphs as if fully set

forth in this Count.

38.     Defendant CDOC violated Title II of the ADA by failing to

provide Mr. Williams a workplace accommodation due to this

disability and then punishing him by restricting his activities and

privileges for failing to perform work he was unable to do.

39.     Title II of the ADA states: "no qualified individual shall, by

reason of such disability, be excluded from participation in or be

denied the benefits of the services, programs, or activities of a public

entity, or be subjected to discrimination by any such entity."

40.     State prisons are within the statutory definition of a "public

entity." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).


41.To state a claim under Title II, the plaintiff must allege that 1) he is

a qualified individual with a disability; 2) who was excluded from

participation in or denied the benefits of a public entity's services,

programs, or activities; and 3) such exclusion, denial of benefits,

or discrimination was by reason of a disability. *Cohon ex rel. Bass v.*

*New Mexico Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011).


42.     Mr. Williams had substantial limitations in major life activities

including standing and bending and therefore qualified as disabled

under the ADA.


43.     CDOC intentionally discriminated against Mr. Williams on the

basis of disability by punishing him for being unable to complete

work that he was unable to complete solely on account of his

disability.

9

44.     CDOC also failed to accommodate Mr. Williams's disability by assigning him work he could not do with his limitations, failing to accommodate those limitations, and then punishing him for not completing the work.

45.     CDOC and its staff were deliberately indifferent to a risk of disability discrimination, as they were aware of his disability and need for accommodation and knowingly disregarded it.

**Count II – Rehabilitation Act,** 29 U.S.C. § 701 *et seq.*

Intentional Discrimination Against and Failure to Accommodate Mr. Williams for Not Performing Work He Was Physically Unable to Do

46.     Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs as if specifically alleged herein.

47.     Section 504 of the Rehabilitation Act of 1973 provides, in pertinent part: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving

Federal financial assistance." 29 U.S.C. § 794(a).

48.     CDOC receives federal funding.

49.     The elements for proving a violation of the ADA and the RA are

the same, except that an element of the RA is that the entity receives

federal funding. *Havens v. Colorado Dep't of Corr.*, 897 F.3d 1250,

1263 (10th Cir. 2018).

50.     Mr. Williams had substantial limitations in major life activities

including standing and bending and therefore qualified as disabled

under the RA.

51. CDOC intentionally discriminated against Mr. Williams on the basis

of disability by punishing him for being unable to complete work that

he was unable to complete solely on account of his disability.

52.     CDOC also failed to accommodate Mr. Williams's disability by

assigning him work he could not do with his limitations, failing to

accommodate those limitations, and then punishing him for not completing the work.

53.     CDOC and its staff were deliberately indifferent to a risk of disability discrimination, as they were aware of his disability and need for accommodation and knowingly disregarded it.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Charles Williams prays that this Court:

1.  Award monetary damages as compensation for the harm suffered by Mr. Willaims including but not limited to:

    a.  All economic losses on all claims as allowed by law.

    b.  Compensatory and consequential damages, including damages for emotional distress, embarrassment, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be

9

determined at trial;

c. Attorneys' fees and costs associated with this action, including expert witness fees, on all claims allowed by law; and

2. All appropriate relief at law and equity that this Court deems just and proper.

Dated: November 29, 2021      Respectfully submitted,

/s/ Samuel Weiss

Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW #26152
Washington, DC 20002
sam@rightsbehindbars.org

Counsel for Charles Lamont Williams