FILED
United States Court of Appeals
Tenth Circuit

August 25, 2022

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

CHARLES WILLIAMS,

    Plaintiff - Appellant,

v.

COLORADO DEPARTMENT OF
CORRECTIONS,

    Defendant - Appellee.

No. 22-1033
(D.C. No. 1:21-CV-02595-LTB-GPG)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK** and **CARSON**, Circuit Judges.

_____

Charles Lamont Williams is a prisoner in the custody of the Colorado Department of Corrections (CDOC). Through counsel, he alleges that prison officials discriminated against him on account of a disability, in violation of the Rehabilitation Act, 29 U.S.C. §§ 701–796*l*, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132–12165. The district court screened his complaint and dismissed it as frivolous. *See* 28 U.S.C. § 1915(e)(2)(b)(i). We

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

## I.   BACKGROUND & PROCEDURAL HISTORY

### A.   Williams's Allegations

The district court's dismissal order was directed at Williams's amended complaint, which alleges substantially as follows.

CDOC currently houses Williams at its Buena Vista Correctional Complex. Williams suffers from medical conditions that cause pain and make it difficult to walk, stand, and bend.  Buena Vista medical staff issued work restrictions for him, such as no standing more than two hours and no repetitive bending at the waist.

In September 2019, a Buena Vista officer assigned Williams to kitchen duty. Williams believed his medical restrictions prevented him from successfully performing kitchen tasks and he raised that issue through communications with his case manager and through grievances, but received no reassignment or accommodation.  So he showed up for kitchen duty with his restriction list in hand. The kitchen staff looked at the list, decided he could not perform the necessary tasks, and excused him back to his cell.  This became a daily ritual for two weeks, after which kitchen staff stopped looking at his restriction list and simply sent him back to his cell upon his arrival.

On September 23, Williams was feeling particularly severe back pain.  Rather than showing up for kitchen duty and being sent back to his cell, he put in a request for a medical appointment, confident that medical staff would excuse him from work

that day. His prediction was correct. "[S]everal hours later," a medical staff member gave him permission to stay in his cell. Aplt. App. at 15, ¶ 29; *see also id.* at 13, ¶ 22.

Three days after that, a Buena Vista officer submitted a grievance against Williams for failing to report for kitchen duty on September 23. This officer also had Williams fired from his kitchen assignment. The grievance prompted CDOC to place Williams in a stricter security level, meaning he lost privileges and autonomy. Williams filed his own grievance against all of this and received a response from a CDOC official stating he had been disciplined for an unexcused failure to show up at work (*i.e.*, medical staff did not excuse his absence until later in the day).

After exhausting the full CDOC administrative grievance process, Williams brought the lawsuit now at issue, alleging: (i) CDOC unreasonably failed to accommodate his disability, and (ii) the discipline CDOC imposed amounts to disability discrimination.

## B. District Court Proceedings

The district court granted Williams leave to proceed *in forma pauperis*, and therefore screened his amended complaint as required by 28 U.S.C. § 1915(e)(2). A magistrate judge took the first look and recommended that the complaint be dismissed as frivolous. *See id.* § 1915(e)(2)(b)(i). The magistrate judge reasoned that: (i) Williams had failed to "allege facts that demonstrate he was fired from his prison job or reclassified because of his disability"; and, in any event, (ii) "the

3

ADA and the Rehabilitation Act do not apply to issues of prison employment." Aplt. App. at 27.

Williams timely objected but the district court adopted the recommendation without elaboration and dismissed the amended complaint as frivolous. Williams then timely appealed.

## II. ANALYSIS

The district court found frivolousness based on its determination that Williams had not adequately alleged causation and the ADA and Rehabilitation Act do not apply to prison employment anyway. These are questions of law, so we review them de novo. *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) ("[W]here the frivolousness determination turns on an issue of law, we review the determination *de novo*."); *see also Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986) ("The sufficiency of a complaint is a question of law . . . ."). Dismissing a claim as frivolous at the screening phase "is only appropriate for a claim based on an indisputably meritless legal theory." *Fogle*, 435 F.3d at 1259 (internal quotation marks omitted).

### A. Applicability of the ADA and Rehabilitation Act

The district court's broadest ruling was that the ADA and Rehabilitation Act do not apply to prison employment matters, so we will address this ruling first. The Rehabilitation Act states, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any

4

program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Title II of the ADA states, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

The district court reasoned that our decisions in *Williams v. Meese*, 926 F.2d 994 (10th Cir. 1991), and *White v. Colorado*, 82 F.3d 364 (10th Cir. 1996), foreclose an ADA or Rehabilitation Act claim involving prison employment. Williams counters that the Supreme Court effectively abrogated these two decisions in *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206 (1998) ("*Yeskey*"). We need not decide whether *Yeskey* abrogated *Williams* and *White* because, at a minimum, *Yeskey* highlights an important question that *Williams* and *White* never addressed—and the answer to that question shows the complaint should not have been dismissed as frivolous on account of *Williams* and *White*.

Our 1991 *Williams* decision arose from a federal prisoner's *pro se* lawsuit claiming prison officials "denied him certain prison job assignments, for which he was qualified, solely on the basis of his age, race, or handicap." 926 F.2d at 996. We did not enumerate which legal authorities the plaintiff relied on, but we began by discussing the potential applicability of Title VII and the Age Discrimination in Employment Act (ADEA). *Id.* at 997. We said that both of these statutes require an employment relationship with the defendant, and we held that prisoners do not have an employment relationship with their prisons, so Title VII and the ADEA could not

5

apply. *Id.* We then announced, without elaboration, "The foregoing analysis precludes plaintiff's claims for discrimination under . . . the Rehabilitation Act, as well." *Id.* And we added an additional reason why the Rehabilitation Act did not apply, namely, "the Federal Bureau of Prisons does not fit the definition of 'programs or activities' governed by [29 U.S.C. § 794(a)]." *Id.* Again, we did not elaborate.

Five years later, we decided *White*. The plaintiff there—also a prisoner proceeding *pro se*—claimed the prison refused to arrange for surgery on an injured leg and then denied him prison employment opportunities because of that injury. *See* 82 F.3d at 366, 367. This, he claimed, violated both the Rehabilitation Act and the ADA. *Id.* at 367. We held that *Williams* foreclosed his Rehabilitation Act claim and, "[f]or the same reasoning relied upon in *Williams*, . . . the ADA does not apply to prison employment situations either." *Id.*

*Williams* and *White* together establish that: (i) prisoners in a prison job program are not "employees" for purposes of federal statutes meant to combat employment discrimination (presumably including Title I of the ADA, which is specifically directed at the employer-employee relationship, *see* 42 U.S.C. § 12112(a)); and (ii) a prison system *as a whole* is not a service, program, or activity subject to the Rehabilitation Act or Title II of the ADA. As far as we could locate, neither proposition has been questioned since we handed down those decisions.

Two years after *White*, however, the Supreme Court's *Yeskey* decision addressed a narrower question never contemplated by *Williams* or *White*: what about the programs, services, and activities *within* a prison system? The plaintiff in *Yeskey*

6

had been sentenced to serve eighteen to thirty-six months in a Pennsylvania prison, but he could get out on parole in six months if he completed a program called "Motivational Boot Camp." 524 U.S. at 208. The program administrators would not allow him to participate, however, due to high blood pressure. He then sued, claiming the Pennsylvania prison system is a public entity and Motivational Boot Camp was a prison system program, so Title II of the ADA applied to Motivational Boot Camp. *Id.*

The Supreme Court agreed. "State prisons fall squarely within the statutory definition of 'public entity' . . . ." *Id.* at 210. Moreover, "[m]odern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,'" and "[t]he text of the ADA provides no basis for distinguishing these programs, services, and activities from those provided by public entities that are not prisons." *Id.*

Whether or not prison systems as a whole are "services, programs, or activities of a public entity," 42 U.S.C. § 12132, *Yeskey* makes clear that the services, programs, and activities *offered by* a prison system fall under Title II of the ADA. And we are confident the answer is the same for the corresponding provision of the Rehabilitation Act (29 U.S.C. § 794(a)). *See Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1312 (10th Cir. 2021) ("We typically evaluate claims identically under the ADA and Rehabilitation Act.").

Our decisions since *Yeskey* have never questioned the Rehabilitation Act's or Title II's application to correctional programs, services, and activities, *see, e.g.*,

7

*Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 n.6 (10th Cir. 2007) ("[U]se of the telephone and participation in a probable cause hearing [while in county jail] are 'services' under the ADA."), including when the claim involved inability to fulfill a prison employment requirement due to disability, *see Marks v. Colo. Dep't of Corr.*, 976 F.3d 1087, 1091 (10th Cir. 2020). *Cf. Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (acknowledging that "working in the prison kitchen" is among the "programs fall[ing] within Title II's scope").

Williams alleges that CDOC (a public entity, and presumably one that receives federal funds) violated his Title II and Rehabilitation Act rights by failing to accommodate his disability with respect to prison employment (a CDOC program) and disciplining him for not performing a job assignment contraindicated by his disability. *Yeskey* and later cases show this is a viable theory, not "indisputably meritless," *Fogle*, 435 F.3d at 1259 (internal quotation marks omitted). The district court therefore incorrectly invoked *Williams* and *White* to dismiss the amended complaint as frivolous.

B.   **Causation**

We next turn to the district court's ruling that Williams failed to "allege facts that demonstrate he was fired from his prison job or reclassified because of his disability." Aplt. App. at 27. This ignores the failure-to-accommodate aspect of his claim, which predates the discipline and reclassification. Also, the district court did not elaborate, so we do not know what causation flaw it perceived.

8

We nonetheless recognize that CDOC's explanation for disciplining Williams was that, on the day in question, he did not receive medical authorization to stay in his cell until "several hours" after he failed to report to work. *Id.* at 15, ¶ 29. One could read this to mean that CDOC expected him at least to show up in the kitchen at the required hour, even if kitchen staff would excuse him back to his cell. These circumstances potentially complicate the causation question, but we cannot say they render Williams's claim indisputably meritless, *see Fogle*, 435 F.3d at 1259. The district court should not have dismissed the claim as frivolous.

Conceivably, we could affirm on the alternate basis that the amended complaint "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). But the causation issue just discussed is the only arguable pleading weakness we see in Williams's complaint, and no authority of which we are aware dictates how a court should resolve that issue. We do not mean to prejudge the issue, nor to suggest that there are no other bases on which CDOC might move to dismiss. But we cannot say on this record, without adversarial briefing, that Williams fails to state a claim. Thus, Williams's complaint should not have been dismissed through the § 1915(e)(2) screening process.

## III. CONCLUSION

We reverse and remand for proceedings consistent with this order and judgment.

    Entered for the Court

    Timothy M. Tymkovich
    Chief Judge

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

| Christopher M. Wolpert | | Jane K. Castro |
|---|---|---|
| Clerk of Court | | Chief Deputy Clerk |

August 25, 2022

Samuel Weiss
Rights Behind Bars
416 Florida Avenue NW, Unit 26152
Washington, DC 20001

**RE:** **22-1033, Williams v. Colorado Department of Corrections**
Dist/Ag docket: 1:21-CV-02595-LTB-GPG

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

CMW/lg