IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 21-cv-02595-NYW-NRN

CHARLES WILLIAMS,

    Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

    Defendant.

## ORDER ON MOTION TO DISMISS

This matter is before the Court on Defendant's Partial Motion to Dismiss Amended Complaint Under Fed. R. Civ. P. 12(b)(6) (the "Motion" or "Motion to Dismiss") [Doc. 38, filed January 24, 2023]. The Court has reviewed the Motion and the related briefing, the entire docket, and the applicable case law. For the reasons set forth in this Order, the Motion to Dismiss is respectfully **GRANTED in part** and **DENIED as moot in part**.

## BACKGROUND

**I.    Factual Background**

The following facts are drawn from the Complaint and Request for Relief (the "Amended Complaint") [Doc. 10] and are taken as true for purposes of this Order. At the time he filed his Amended Complaint, Plaintiff Charles Williams ("Plaintiff" or "Mr. Williams") was incarcerated[1]

---

[1] Though unclear, it appears that Mr. Williams has been released from custody. The Motion to Dismiss states that Mr. Williams "was previously incarcerated in the CDOC," [Doc. 38 at 1], and Mr. Williams does not contest this assertion. In addition, the Scheduling Order's "Undisputed Facts" section states that "Plaintiff Charles Williams is an individual who *was* incarcerated at the Buena Vista Correctional Facility within the Colorado Department of Corrections (CDOC) at the time of filing this action." [Doc. 41 at 3 (emphasis added)].

within the Colorado Department of Corrections ("Defendant" or "CDOC") and was housed at the Buena Vista Correctional Complex ("BVCC"). [Doc. 10 at ¶ 2]. Mr. Williams "has long suffered from chronic back pain and bilateral peripheral neuropathy that places substantial limitations on many of his major life activities, including walking, standing, bending, and climbing." [*Id.* at ¶ 10]. On October 4, 2018, a medical staff member placed Mr. Williams on several work and housing restrictions to address his disability, including "No standing over 2 hours" and "No Repetitive Bending at the Waist." [*Id.* at ¶ 11].

Despite these restrictions, in July 2019, Mr. Williams was assigned to work in the kitchen at BVCC, which required standing for over two hours and "repetitive" bending. [*Id.* at ¶¶ 12–13].[2] Because Mr. Williams was physically incapable of working in the kitchen, he "sought and received a 'lay[-]in,' which is a medical request that excuses a prisoner from conducting an official activity." [*Id.* at ¶ 13]. Mr. Williams was "laid in" for 47 days before he was relieved of his kitchen duty for medical reasons. [*Id.*].

In September 2019, Mr. Williams was again assigned to work in the kitchen. [*Id.* at ¶ 14]. Mr. Williams filed multiple grievances explaining that he could not physically work in the kitchen and was told that the kitchen would accommodate his disabilities. [*Id.* at ¶ 15]. Mr. Williams requested a disability-accommodation form and asked to speak with BVCC's disability coordinator, but BVCC staff did not provide Mr. Williams with an accommodation form or put him in contact with the disability coordinator. [*Id.* at ¶ 16].

Mr. Williams began reporting to work at the kitchen; each day, he would provide kitchen staff with a list of his working restrictions, and each day, kitchen staff would send him back to his

---

[2] Mr. Williams alleges that he was given the kitchen assignment by an individual named Major Hansen in retaliation for filing a lawsuit against BVCC. [Doc. 10 at ¶ 12]. However, Mr. Williams does not assert a retaliation claim in his Amended Complaint. *See generally* [*id.*].

2

cell, without having worked, reasoning that he "can't work" in the kitchen. [*Id.* at ¶ 17]. After approximately two weeks, kitchen staff began automatically sending Mr. Williams back to his cell after he entered the kitchen area without examining his work restrictions. [*Id.* at ¶ 18].

On September 21 and 22, 2019, Mr. Williams submitted a "medical emergency request" due to unusually severe back pain. [*Id.* at ¶¶ 19–20]. On both days, he reported to the kitchen for work and was sent away. [*Id.*]. On September 23, 2019, he again submitted a medical emergency request, but "[b]ecause Mr. Williams knew that that he would see the doctor that day who would provide him a medical lay-in," he "did not go through the formulaic act of reporting to the kitchen only to be waved away." [*Id.* at ¶ 21]. A medical staff member provided Mr. Williams with a medical lay-in, [*id.* at ¶ 22], and during that lay-in, an unidentified corrections officer told Mr. Williams that "he understood that Mr. Williams had had a medical emergency and received a lay-in so he would have no complications from not reporting to the kitchen." [*Id.* at ¶ 24].

However, three days after his lay-in, an officer wrote a grievance against Mr. Williams for his failure to work on September 23, 2019, and Mr. Williams was fired from his kitchen job. [*Id.* at ¶ 26]. Mr. Williams was informed by an individual named Officer Coleman that the medical lay-in did not excuse his failure to report to work on September 23, 2019 because he had not received the lay-in until several hours after he failed to report to work. [*Id.* at ¶ 29]. The grievance against Mr. Williams triggered a reclassification of Mr. Williams's prisoner status, reclassifying him from a "medium custody" prisoner to a "close custody" prisoner, which resulted in Mr. Williams losing "privileges and autonomy." [*Id.* at ¶ 27]. The loss of privileges included significantly less recreation time, which resulted in Mr. Williams being afforded less time to perform exercises intended to alleviate his back pain. [*Id.* at ¶ 31]. Mr. Williams alleges that

"[t]his lessened recreation caused Mr. Williams physical injury by subsequent and exacerbated back pain." [*Id.* at ¶ 32].

## II.     Procedural Background

Mr. Williams initiated this action *pro se* on September 24, 2021, [Doc. 1], and was granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. [Doc. 4]. After the Honorable Gordon P. Gallagher directed Mr. Williams to file an amended pleading, *see* [Doc. 5], counsel entered an appearance for Mr. Williams on November 29, 2021, [Doc. 9], and filed the Amended Complaint that same day through counsel. [Doc. 10]. Plaintiff asserts two claims for relief: one claim arising under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"), and another claim asserted under the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.* [Doc. 10 at 11, 13].

On initial review, Judge Gallagher recommended[3] that the Amended Complaint be dismissed as legally frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). [Doc. 13 at 6]. Relevant here, Judge Gallagher decided, *inter alia*, that "the ADA and the Rehabilitation Act do not apply to issues of prison employment." [*Id.* at 5]. Over Plaintiff's objection, *see* [Doc. 14], the Honorable Lewis T. Babcock accepted Judge Gallagher's recommendation and dismissed Plaintiff's Amended Complaint. [Doc. 15].

Plaintiff appealed the dismissal of his lawsuit to the United States Court of Appeals for the Tenth Circuit. [Doc. 17]. On August 25, 2022, the Tenth Circuit reversed the dismissal, concluding that the services, programs, or activities—such as employment programs—offered within a prison system fall within the purview of Title II of the ADA and the Rehabilitation Act.

---

[3] At the time Judge Gallagher issued his recommendation, he served as a United States Magistrate Judge. He has since been appointed as a United States District Judge.

*See generally* [Doc. 22 at 4–8].  The Tenth Circuit decided that Mr. Williams's theory of relief was not "indisputably meritless" and concluded that Mr. Williams's Amended Complaint should not have been dismissed through the § 1915(e)(2) screening process.  [*Id.* at 9, 10].  The case was remanded to the District of Colorado, reinstated, and randomly reassigned to the undersigned.  [Doc. 23; Doc. 25].

The CDOC filed the instant Motion to Dismiss on January 24, 2023.  [Doc. 38].  Therein, the CDOC argues that (1) Mr. Williams's claims are barred "in part" by the applicable statute of limitations; and (2) Mr. Williams's claims should be dismissed to the extent he seeks damages for mental or emotional injuries.  [*Id.* at 3].  Mr. Williams then filed "Plaintiff's Partial Opposition to Defendant's Partial Motion to Dismiss," [Doc. 44], and the CDOC has replied.  [Doc. 48].  This matter is thus ripe for disposition.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible").  The Court must ultimately

5

"determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

The CDOC raises two arguments in its Motion to Dismiss: first, it contends that Mr. Williams's claims are partially barred by the applicable statute of limitations, and second, it argues that emotional distress damages are not recoverable with respect to either of Mr. Williams's claims. [Doc. 38 at 4–9]. The Court addresses these arguments in turn.

### I.    The Scope of Plaintiff's Claims

The CDOC first maintains that Mr. Williams's claims are barred "in part"—specifically, insofar as they are based on his July 2019 kitchen work assignment—by the applicable statute of limitations. [*Id.* at 4–5]. In response to this argument, Plaintiff clarifies that his claims "center on his September 26, 2019 firing from the kitchen for work he was physically incapable of doing as well as the firing's consequences." [Doc. 44 at 1]. According to Plaintiff, he included allegations concerning the July 2019 work assignment simply to provide background context and to demonstrate "Defendant's awareness of his disability; his need for accommodation; and [Defendant's] deliberate indifference to the violation of his rights under disability law." [*Id.*]. The CDOC does not address Plaintiff's clarification in its Reply, but also does not reiterate its argument that any portions of Mr. Williams's claims are barred by the applicable statute of limitations. *See generally* [Doc. 48].

While Plaintiff cannot amend his operative pleading by statements made in response to a motion to dismiss, *see Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010), nothing bars him from clarifying the scope or nature of his claims. In light of Mr. Williams's

6

clarification that his claims are not based on the July 2019 work assignment, the CDOC's arguments advocating for dismissal of any portion of his claims based on that work assignment are moot, and the Court need not address them.  *See Brown v. Bd. of Educ. of Pueblo Sch. Dist. No. 1*, No. 05- cv-02079-WYD-BNB, 2007 WL 389947, at *5 (D. Colo. Feb. 1, 2007) (concluding that arguments in the defendants' motion to dismiss were moot when they were directed at claims the plaintiff disclaimed in her response); *Foster v. Gadberry*, No. 10-cv-01067-WJM-MJW, 2012 WL 502682, at *3 (D. Colo. Jan. 18, 2012) ("In his Response, plaintiff clarifies that he seeks damages from each named defendant in his or her individual capacities, not their official capacities. Therefore, the court need not address defendants' first argument for dismissal." (citation omitted)). Accordingly, insofar as the Motion to Dismiss seeks to dismiss any portion of Plaintiff's claims based on the July 2019 work assignment (which Plaintiff has expressly disclaimed), the Motion is **DENIED as moot**.

II.     **Emotional Distress Damages Under the Rehabilitation Act and the ADA**

The CDOC also asserts in the Motion to Dismiss that neither the Rehabilitation Act nor Title II of the ADA permits recovery for mental or emotional injuries, and thus, insofar as Mr. Williams seeks to recover those categories of damages, his claims should be dismissed. [Doc. 38 at 5–9].  In support of its argument, the CDOC directs the Court to the recent United States Supreme Court decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, --- U.S. ----, 142 S. Ct. 1562 (2022).  *See* [Doc. 38 at 6].

In *Cummings*, the Supreme Court considered whether emotional distress damages are recoverable in actions arising under the Rehabilitation Act and the Patient Protection and Affordable Care Act (the "ACA").  *Cummings*, 142 S. Ct. at 1569.  In answering this question, the Court first identified "four statutes prohibiting recipients of federal financial assistance from

7

discriminating based on certain protected grounds," which were enacted pursuant to Congress's authority to "fix the terms on which it shall disburse federal money"—i.e., pursuant to its Spending Clause power: Title VI of the Civil Rights Act of 1964; Title IX of the Education Amendments of 1972; the Rehabilitation Act; and the ACA. *Id.* The Court then explained that any determination as to these statutes' available remedies "must be informed by the way Spending Clause 'statutes operate': by 'conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds.'" *Id.* at 1570 (quoting *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 286 (1998)); *see also id.* ("Spending Clause legislation operates based on consent: 'in return for federal funds, the recipients agree to comply with federally imposed conditions'" (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 16, 17 (1981) (alterations omitted))). It continued: "the legitimacy of Congress'[s] power to enact Spending Clause legislation rests not on its sovereign authority to enact binding laws, but on whether the recipient voluntarily and knowingly accepts the terms of that 'contract.'" *Id.* (quotation and alteration marks changed). This contract-law analogy thus "limits the scope of available remedies in actions brought to enforce Spending Clause statutes." *Id.* (quotation omitted).

Against this background, to determine whether emotional distress damages were available under the Rehabilitation Act and the ACA, the Supreme Court "ask[ed] a simple question: Would a prospective funding recipient, at the time it engaged in the process of deciding whether to accept federal dollars, have been aware that it would face such liability?" *Id.* at 1570–71 (quotation omitted and alteration marks changed). Reasoning that emotional distress damages are not generally compensable in contract, *see id.* at 1571–76, the Supreme Court found "no ground, under our cases, to conclude that federal funding recipients have clear notice that they would face such

8

a remedy in private actions brought to enforce" the Spending Clause statutes. *Id.* at 1576 (quotation and citation omitted). Accordingly, the *Cummings* Court concluded that "emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes" addressed in the opinion, including the Rehabilitation Act. *Id.*

Defendant argues that, under *Cummings*, emotional distress damages are not available to Plaintiff under his Rehabilitation Act claim or his ADA claim. [Doc. 38 at 7]. Mr. Williams does not appear to dispute that such damages are not recoverable under the Rehabilitation Act. *See* [Doc. 44 at 2]. However, he disagrees that *Cummings* governs the issue with respect to his ADA claim. Specifically, he asserts that the analysis in *Cummings* "was expressly limited, and reliant on, the contractual dynamic of Spending Clause [statutes] such as the Rehabilitation Act," and posits that "Title II . . ., by contrast, is not Spending Clause legislation and therefore does not invoke the same contractual issues that dictated the outcome in *Cummings*." [*Id.*]. While he concedes that "Title II remedies . . . mirror those of the Rehabilitation Act," he maintains that "it would make little sense" to preclude recovery for emotional damages on a Title II ADA claim because the ADA was not enacted pursuant to the Spending Clause, but "as part of Congress's Fourteenth Amendment, Section 5 enforcement power." [*Id.*].

The Court respectfully disagrees with Plaintiff and agrees with Defendant. The ADA expressly incorporates the remedies set forth in the Rehabilitation Act, providing that "[t]he remedies, procedures, and rights set forth in [§ 505(a)(2) of the Rehabilitation Act] *shall be the remedies, procedures, and rights this subchapter provides* to any person alleging discrimination on the basis of disability." 42 U.S.C. § 12133 (emphasis added).[4] And in *Cummings*, the Supreme

---

[4] And "Section 505(a)(2) of the Rehabilitation Act, in turn, declares that the 'remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 . . . shall be available' for violations

9

Court made clear that emotional distress damages are not available under the Rehabilitation Act. *Cummings*, 142 S. Ct. at 1576. It necessarily follows that if the remedies provided by Title II to ADA claimants are those remedies that are available under the Rehabilitation Act, and if emotional distress damages are *not* available under the Rehabilitation Act, then emotional distress damages would not be available in Title II cases, either. *See Montgomery v. District of Columbia*, No. CV 18-1928 (JDB), 2022 WL 1618741, at *24 (D.D.C. May 23, 2022) ("[I]f a certain category of damages is not available under [the Rehabilitation Act], it is not available under Title II either."); *Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, No. 3:20-cv-11-MAB, 2023 WL 348320, at *2 (S.D. Ill. Jan. 20, 2023) ("Because Title II of the ADA incorporates the remedies set forth in the [Rehabilitation Act] . . . it therefore follows that emotional distress damages are also not available in suits brought under the ADA.").

The fact that the ADA was not enacted pursuant to the Spending Clause does not alter the Court's analysis. "[T]he Supreme Court has previously rejected the theory that the ADA should be interpreted differently from the Rehabilitation Act and Title VI . . . because of this distinction." *Montgomery*, 2022 WL 1618741, at *15. In *Barnes v. Gorman*, the Supreme Court held that because punitive damages are not available in private suits arising under Title VI of the Civil Rights Act of 1964, they are similarly not available in suits arising under Title II of the ADA or the Rehabilitation Act. *See Barnes v. Gorman*, 536 U.S. 181, 189–90 (2002); *see also id.* at 185 ("[T]he remedies for violations of § 202 of the ADA and § 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964."). In so doing, the Supreme Court applied the same contract-law analogy

---

of § 504 [of the Rehabilitation Act]." *Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (citing 29 U.S.C. § 794a(a)(2)).

to Title VI as the Court applied to the Rehabilitation Act and ACA in *Cummings*. *See id.* at 187–88 ("[P]unitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract. . . . Title VI funding recipients have not, merely by accepting funds, implicitly consented to liability for punitive damages."). In his concurrence, Justice Stevens disagreed that this contract-based approach was appropriate to determine the available remedies under the ADA, which "was not enacted pursuant to the Spending Clause." *Id.* at 192 (Stevens, J., concurring). In response, the majority opinion acknowledged that the ADA "is not Spending Clause legislation," but concluded that "the ADA's status as a 'non Spending Clause' tort statute" was "quite irrelevant" because "[t]he ADA could not be clearer that the 'remedies, procedures, and rights . . . this subchapter provides' for violations of § 202 are the same as the 'remedies, procedures, and rights set forth in' § 505(a)(2) of the Rehabilitation Act, which *is* Spending Clause legislation." *Id.* at 189 n.3 (quoting 42 U.S.C. § 12133). Thus, this Court is respectfully unpersuaded that *Cummings* is not applicable to Plaintiff's ADA claim.

Furthermore, district courts substantively addressing this issue have seemingly unanimously concluded that, post-*Cummings*, emotional distress damages are not recoverable under Title II of the ADA. *See, e.g.*, *Montgomery*, 2022 WL 1618741, at *24; *Pennington*, 2023 WL 348320, at *2; *A.T. v. Oley Valley Sch. Dist.*, No. CV 17-4983, 2023 WL 1453143, at *3 (E.D. Pa. Feb. 1, 2023).[5] Plaintiff has not directed the Court to any cases expressly holding otherwise,[6]

---

[5] *See also Kovatsenko v. Ky. Cmty. and Tech. Coll.*, No. CV 5:23-066-DCR, 2023 WL 3346108, at *4 (E.D. Ky. May 10, 2023); *A.W. by & through J.W. v. Coweta Cnty. Sch. Dist.*, No. 3:21-cv-218-TCB, 2022 WL 18107097, at *3–4 (N.D. Ga. Nov. 16, 2022); *Faller v. Two Bridges Reg'l Jail*, No. 2:21-cv-00063-GZS, 2022 WL 17260763, at *1 (D. Me. Nov. 2, 2022); *J.P. as Next Friend of A.S.W. v. Nebraska*, No. 4:22-cv-3095, 2022 WL 5254121, at *6 (D. Neb. Oct. 6, 2022).

[6] Mr. Williams relies upon *Doe v. Purdue University*, No. 18-cv-89-JEM, 2022 WL 2828238 (N.D. Ind. July 20, 2022), wherein the court declined to apply *Cummings* to a claim arising under Title IX. *See* [Doc. 44 at 2]; *see also Purdue*, 2022 WL 2828238, at *4 ("Because *Cummings* was not a Title IX action, it does not make evidence of emotional distress or harm inadmissible in this case.

and the Court could locate no contrary authority through its independent research. The Court is persuaded by this weight of authority from other district courts and similarly concludes that, under *Cummings*, emotional distress damages are not available under Title II of the ADA.

Accordingly, the Court will **GRANT** the Motion to Dismiss insofar as it seeks dismissal of Plaintiff's request for emotional distress damages. Plaintiff's requests for economic loss or physical pain and suffering, *see* [Doc. 10 at 15–16], remain. *See A.T.*, 2023 WL 1453143, at *4 ("Although *Cummings* bars claims for compensatory emotional damages under Section 504 of the [Rehabilitation Act] . . . and the ADA, there is nothing in the decision that bars a plaintiff from seeking other forms of compensatory damages under these . . . statutes.").

## CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that:

(1)     Defendant's Partial Motion to Dismiss Amended Complaint Under Fed. R. Civ. P. 12(b)(6) [Doc. 38] is **GRANTED in part** and **DENIED as moot in part**; and

---

Therefore, evidence of such damages will not be precluded." (citation omitted)). Not only does *Purdue* involve claims asserted under a different statute than the claims in this case, the Court also notes that the *Purdue* decision has been critiqued by other courts as being "against the thrust—even if relegated to dicta—of the Supreme Court's opinion in *Cummings*." *Doe next friend of Doe v. City of Pawtucket*, No. CV 17-365-JJM-LDA, 2022 WL 4551953, at *3 (D.R.I. Sept. 29, 2022); *see also A.T.*, 2023 WL 1453143, at *3. Mr. Williams also directs the Court to *Coleman v. Cedar Hill Independent School District*, No. 3:21-cv-2080-D, 2022 WL 1470957 (N.D. Tex. May 10, 2022). *See* [Doc. 44 at 2]. In *Coleman*, the defendant sought to compel the medical records of a plaintiff who asserted claims under the Rehabilitation Act, the ADA, the FMLA, and Texas state law. 2022 WL 1470957, at *1. The *Coleman* court concluded that Plaintiff's medical records related to her mental anguish were relevant to the case and stated, in a footnote, that "[a]fter the briefing on this motion [to compel] was completed, the Supreme Court decided *Cummings* . . . holding, in pertinent part, that emotional distress damages are not recoverable under the Rehabilitation Act. . . . Because Coleman's claims are not limited to the Rehabilitation Act, *Cummings* does not alter the court's analysis as it relates to her other claims." *Id.* at *3 n.2. The Court is respectfully unpersuaded that *Coleman* calls into question the guidance from numerous other contrary decisions, as the *Coleman* decision did not "fully analyze[] the issue of *Cummings*' implications for all Spending Clause legislation as did the majority of decisions cited above." *A.T.*, 2023 WL 1453143, at *3.

12

(2)    Plaintiff's claims, insofar as they seek emotional distress damages, are **DISMISSED**.

DATED: May 22, 2023

BY THE COURT:

_____
Nina Y. Wang
United States District Judge