IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02595-NYW-NRN

CHARLES WILLIAMS,

Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

Defendant.

**THE CDOC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Colorado Department of Corrections ("CDOC"), by and through the Colorado Attorney General, respectfully submits this reply in support of its Motion for Summary Judgment (ECF No. 65) (the "Motion").

## INTRODUCTION

Plaintiff Charles Williams's Opposition to Motion for Summary Judgment (the "Response") fails to identify disputed material facts that preclude summary judgment. His argument that the CDOC failed to accommodate his disability and discriminated against him on the basis of disability rests on unfounded speculation and inadmissible testimony that do not constitute competent evidence for summary judgment purposes.

The undisputed evidence shows that Williams's reclassification to close custody was the result of his decision not to report to work in the kitchen, and it was not an act of discrimination or failure to accommodate. Because Williams cannot overcome the CDOC's argument that it did not discriminate against Williams or fail to accommodate him, let alone show that CDOC acted

1

with deliberate indifference such that he could recover damages, the CDOC is entitled to judgment as a matter of law.

## Reply Concerning Undisputed Facts

16-17. Williams does not dispute that the CDOC's stated reasons for his reclassification and upholding the reclassification decision were his refusal to work. Williams's speculation that these reasons were not genuine is unsupported by competent evidence.

18. The CDOC clarifies that Williams's grievance stated he had not had an interactive accommodation process in his food service job, and he requested an accommodation process initiated for him in all future job placements.

19. Williams does not dispute the content of Williams's grievance response as stated in SUMF ¶ 19. The CDOC attaches a corrected version of Exhibit J (Grievance, Williams025) containing the grievance and its response, which Williams produced to the CDOC in discovery.

21. Williams disputes only the CDOC's characterization of the request, which is immaterial for purposes of summary judgment.

## Response Concerning Disputed Facts

The Response fails to set forth a Statement of Additional Disputed Facts as required under NYW Civ. Practice Standard 7.1D(b)(5). Its narrative of factual assertions intermingled with legal argument do not adequately place the CDOC and the Court on notice as to which facts Williams believes are established and which remain in dispute. Nevertheless, the CDOC responds to the assertions it understands to be additional disputed facts:[1]

---

[1] Should the Court identify other assertions it perceives as additional disputed material facts, the CDOC will seek by appropriate motion an additional opportunity to respond. The CDOC welcomes any other relief the Court deems appropriate.

1. Williams provides no competent evidence to support that his kitchen assignment was "generally inconsistent with his [work] restrictions." Resp. at 5 (ECF No. 68).

2. Williams provides no competent evidence, such as testimony of the provider who gave him a lay-in slip or expert testimony, to support his interpretation of his September 23, 2019 lay-in as excusing him from work retroactively. *Id.*

3. Williams's assertions concerning reclassification practices and write-ups (Resp. at 10) is not supported by competent evidence. Gonzales's testimony was properly objected to because he was not responsible for classification or housing decisions and thus could not testify as to whether or how an incident report might trigger a reclassification. *See* Ex. N at 53:6 (ECF No. 68-2); Ex. P (Deposition of Bryan Gonzales, at 51:6-52:6).

## Statement of Additional Undisputed Material Facts

24. Williams did not report to work on September 23, 2019 because he "figured why would I bother if they're not going to send me to work anyway." Ex. Q (Deposition of Charles Lamont Williams, at 92:8-15).

25. On September 23, 2019, Williams asked his case manager to tell food service staff that he had another job and was supposed to be released from the job for medical reasons, neither of which was accurate. Ex. R (Chronlog Excerpt, CDOC/Williams 00186).

26. Any time an incident or event occurs that may change an inmate's custody level, it can trigger a reclassification. Ex. S, Decl. of Austin Chrestensen, ¶ 6.

27. BVCC's Internal Classification Committee, which is responsible for all facility classification proceedings and housing assignments, uses an objective rating process to assign inmates to the lowest custody level consistent with safety and security needs. *Id.* ¶¶ 7-8.

28.     Whenever CDOC receives new or additional information that would alter an inmate's classification score, mandatory reclassification scoring will occur. *Id.* ¶ 9.

29.     Because program participation and work evaluations are factors in determining an inmate's custody level, refusing a work assignment can change an inmate's custody level and trigger reclassification. *Id.* ¶ 10.

30.     There is no minimum number of incident reports an inmate must receive to trigger a reclassification; even just one incident of refusal to work may change an inmate's custody level. *Id.* ¶ 11.

31.     When an inmate self-declares a medical emergency, unit staff contact medical and explain the inmate's described symptoms or reason for self-declaring an emergency, and medical staff determine whether the inmate's needs are urgent enough to be escorted to medical immediately or whether he can be scheduled for an appointment at a later time. *Id.* ¶¶ 16-17.

32.     In contrast, when emergency medical treatment is needed, such as for a heart attack or life-threatening injury, unit staff call first responders, and medical providers will report to the unit to provide emergency treatment. *Id.* ¶¶ 18-19.

## ARGUMENT

**I.    Williams cannot show that the CDOC failed to provide reasonable accommodations for his disability.**

The CDOC presented evidence that it afforded Williams numerous disability accommodations, up to and including excusing him from having to perform actual kitchen work duties – though, critically, not excusing him from *appearing* for work altogether. Williams does not dispute that these accommodations were provided or that they were sufficient. Resp. at 11 (ECF No. 68). He instead argues that his *reclassification*, rather than his work assignment, was a

4

failure to accommodate in addition to being an instance of disability discrimination. *Id.* at 7-12. This position is unsupported by law and the record.

The ADA and Rehabilitation Act require that prisoners with disabilities be provided with "meaningful access" to services, programs, or activities. *Wright v. New York Dep't of Corrs.,* 831 F.3d 64, 73 (2nd Cir. 2016); *Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1263 (10th Cir. 2018). To assure "meaningful" access, reasonable accommodations to programs or services may be necessary. *Alexander v. Choate,* 469 U.S. 287, 301 (1985). In an action for failure to accommodate, the plaintiff has the burden of demonstrating at summary judgment that (1) an accommodation is available; and (2) the accommodation is reasonable. *Beebe v. Colo*., No. 18-cv-01357-CMA-KMT, 2019 WL 6255763, at *4-5 (D. Colo. Nov. 22, 2019).

For the reasons set forth in the initial motion, Williams cannot show the CDOC failed to provide him reasonable accommodations for his neuropathy and chronic back pain. His new theory that the reclassification itself constituted a failure to accommodate does not save his claim. As an initial matter, Williams provides no support for any theory that inmate classification constitutes a program, service, or activity under the ADA or the Rehabilitation Act. *See* Resp. at 7-12 (ECF No. 68). Even if it is one, Williams fails to establish that any reclassification-related accommodation existed, let alone that it was reasonable. He does not argue, for example, that he needed or requested any accommodation to present information to the Inmate Classification Committee, or to appeal a classification decision. *See id.*

Williams's reliance on *Gandy v. Zavaras*, No. 09-cv-00205, 2010 WL 551408 (D. Colo. Feb. 11, 2010) for the purpose of characterizing his reclassification as a failure to accommodate is also misplaced. *Gandy* involved an inmate who had a prostate disorder that made it difficult to

5

produce timely urine specimens for drug screening purposes, requested and was denied alternate means of specimen collection, and was subjected to disciplinary proceedings for failing to timely produce the specimens. *Id.* at *2-*3, *7. The *Gandy* court denied the prison's Rule 12 motion, holding that the inmate "sufficiently allege[d] he was denied a meaningful opportunity to submit to a drug test by use of an approved alternate testing method as specifically envisioned by the regulation." *Id.* at *7-*8. In other words, *Gandy* alleged an identifiable reasonable accommodation that prison staff did not provide. *Id.* It did *not* rule that the disciplinary action itself was a failure to accommodate, which Williams appears to argue here.

For the reasons above, and because the CDOC has otherwise shown that Williams received accommodations for his various physical disabilities, the Court should grant the CDOC summary judgment to the extent Williams is pursuing an ADA or Rehabilitation Act claim under a failure-to-accommodate theory.

## II.     Williams cannot show that the CDOC discriminated against him on account of a disability.

As stated in the Motion, to obtain relief on a disability discrimination claim under the Rehabilitation Act, a plaintiff must show he was denied the complained-of benefits "'solely by reason of disability.'" *Fitzgerald v. Corr. Corp. of Am.,* 403 F.3d 1134, 1144 (10th Cir. 2005) (*quoting Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992)). To satisfy the ADA's causation prong, a plaintiff must prove that the plaintiff's disability was the "but-for cause" of the discrimination. *Crane v. Utah Dep't of Corr.,* 15 F.4th 1296, 1313 (10th Cir. 2021).

Here, the alleged discriminatory act was the CDOC's reclassification of Williams from medium to close custody. Mot. at SUMF ¶ 16 (ECF No. 65). The evidence shows that his reclassification was the result of his decision to refuse to report for his job assignment without

6

prior permission, and not because he had medical conditions, had allegedly sought to accommodate those conditions at an earlier date, or was allegedly unable to work. *Id.* at SUMF ¶¶ 13, 15-17. Contrary to his assertions that he was "punished" for being unable to work, Williams received medical lay-ins, was unassigned to any job, or was sent back to his unit from the kitchen without working *many* times without facing any adverse action. SUMF ¶¶ 9-12.

Williams appears to argue that his refusal to report to work was pretextual and the CDOC's true motivations were retaliation. Yet he does not provide *any* competent evidence to support this assertion. Williams expresses his belief, for example, that his reclassification may have been an act of retaliation by CDOC case manager Simon Denwalt. Resp. at 8-9 (ECF No. 68). But this claim has no evidentiary merit. The assertion that Denwalt engaged in any allegedly retaliatory behavior is based only on a vague reputation Denwalt supposedly had for engaging in retaliation. Williams does not describe any specific incidents of retaliatory conduct, nor does he provide any evidence that could substantiate this belief. Ex. M, at 131-32 (ECF No. 68-1). Conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Williams also relies on the testimony of former officer Bryan Gonzales to cast doubt on the reason for his reclassification, arguing that it is "implausible" that a single incident report could have triggered Williams's reclassification. Resp. at 9-10 (ECF No. 68). Yet Gonzales's pertinent testimony is not competent evidence, as it is speculative and lacks foundation. *See* Ex. N, at 53:2-17 (ECF No. 68-2). Gonzales, a former floor officer was not responsible for classification or housing decisions and could not testify as to whether or how an incident report might trigger a reclassification. Resp. Concerning Disputed Facts ¶ 3. His speculation thus is not

7

competent summary judgment evidence. *See Bones*, 366 F.3d at 875.

In contrast, Buena Vista Correctional Complex (BVCC) Case Manager III Austin Chrestensen *is* competent to testify as to CDOC's practices concerning inmate reclassification and management. As Chrestensen testifies, any time an incident or event occurs that may change an inmate's custody level, it can trigger a reclassification. SUMF ¶ 26. BVCC's Internal Classification Committee, which is responsible for all facility classification proceedings and housing assignments, uses an objective rating process to assign inmates to the lowest custody level consistent with safety and security needs. SUMF ¶ 27. Whenever CDOC receives new or additional information that would alter an inmate's classification score, mandatory reclassification scoring will occur. SUMF ¶ 28. Because program participation and work evaluations are factors in determining an inmate's custody level, refusing a work assignment can change an inmate's custody level and trigger reclassification. SUMF ¶ 29. There is no minimum number of incident reports an inmate must receive to trigger a reclassification; even just one incident of refusal to work may change an inmate's custody level. SUMF ¶ 30.

Williams also argues that his failure to obtain a lay-in slip before refusing to report to work could not have resulted in reclassification, speculating that "it is hard to imagine" that such a practice would exist. Resp. at 10 & n.2 (ECF No. 68). As Chrestensen testifies, however, procedures when an inmate self-declares a "medical emergency"—essentially a request for a prompt appointment—differ sharply from procedures in a true emergency scenario. When an inmate self-declares a medical emergency, unit staff contact medical and explain the inmate's described symptoms or reason for self-declaring an emergency. SUMF ¶ 31. Based on that information, medical staff determine whether the inmate's needs are urgent enough to be

escorted to medical immediately or whether he can be scheduled for an appointment at a later time. *Id.* In contrast, when emergency medical treatment is needed, such as for a heart attack or life-threatening injury, unit staff will call first responders and medical providers will report to the unit to provide emergency treatment. SUMF ¶ 32.

There is no evidence that Williams was experiencing any life-threatening symptoms that required emergency medical treatment, or that he was unable to report to the kitchen as scheduled. To the contrary, that he did not see a medical provider for several hours suggests medical staff did not believe his symptoms required immediate care. *See* SUMF ¶ 31.

Instead, the evidence shows he refused to report to work, reasoning that he would not bother with it. SUMF ¶ 24. He falsely told Gonzales he was allowed three unexcused absences per month. SUMF ¶ 13. He asked his case manager to falsely tell food service staff that he had another job and was supposed to be released from the job for medical reasons. SUMF ¶ 25. He gave CDOC staff every reason to believe he was refusing to report to work simply because he did not want a kitchen job. In light of the evidence, Williams cannot show that his physical disabilities were the sole or but-for cause of his reclassification. His discrimination claim therefore fails as a matter of law.

**III.    Williams has no remedy available to him in this action.**

As argued in the Motion, to recover compensatory damages under ADA Title II and the Rehabilitation Act, a plaintiff must show intentional discrimination, which in turn requires a showing of deliberate indifference. *See Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999). To establish deliberate indifference in the context of intentional discrimination, a plaintiff must show both (1) "knowledge that a harm to a federally protected right is

9

substantially likely," and (2) "a failure to act upon that ... likelihood." *See Barber ex rel. Barber v. Colo. Dep't of Rev.,* 562 F.3d 1222, 1229 (10th Cir. 2009). The failure to act must be "more than negligent" and involve "an element of deliberateness." *Id.* at 1228. Because nominal damages are compensatory in nature, a plaintiff's failure to establish intentional discrimination in an ADA and Rehabilitation Act action also bars that plaintiff from recovering nominal damages. *Griffin v. Steeltek, Inc.*, 261 F.3d 1026, 1028-29 (10th Cir. 2001).

As set forth above and in the Motion, no evidence suggests that the CDOC acted with an element of deliberateness in any action it took regarding Williams's job placement or his eventual reclassification as a close custody offender. Most significantly, while Williams's response identifies, in a very general sense, a number of CDOC employees who were aware of his disability, Resp. at 14-15 (ECF No. 68), he has not furnished competent evidence that any CDOC employee who was actually involved in his reclassification was aware of his disabilities, knew Williams contended his disabilities – rather than his dissatisfaction with the job assignment – gave rise to his failure to appear for work, but consciously went ahead and reclassified him as a close custody inmate despite that knowledge.

Williams cannot recover damages. And he does not dispute that he cannot obtain declaratory or injunctive relief. Because he has no available remedy, his action must be dismissed as a matter of law.

## CONCLUSION

For the reasons set forth above and in the Motion, the CDOC is entitled to summary judgment in this action, and all claims against it should be dismissed as a matter of law.

Respectfully submitted February 16, 2024.

10

PHILIP J. WEISER
Attorney General

*s/ Gregory Bueno*
ANN STANTON*
GREGORY BUENO*
Assistant Attorneys General
Civil Litigation & Employment Section
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Fax: (720) 508-6032
Email: ann.stanton@coag.gov
          gregory.bueno@coag.gov
*Counsel of Record

**CERTIFICATE OF SERVICE**

This is to certify that I have duly served the CDOC's Reply in Support of Motion for Summary Judgment upon all parties herein by e-filing with the CM/ECF system maintained by the court this 16th day of February, 2024, which will send electronic notification to the following:

Samuel D. Weiss
Oren Nimni
Rights Behind Bars
416 Florida Avenue NW
Suite 26152
Washington, DC 20001
sam@rightsbehindbars.org
oren@rightsbehindbars.org
*Attorney for Plaintiff*

*Courtesy copy e-mailed to:*
Anthony DeCesaro, CDOC

   *s/ Elle Di Muro*