**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-02595-NYW-NRN

CHARLES WILLIAMS,

     Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

     Defendant.

---

### MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on the CDOC's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(a) (the "Motion" or "Motion for Summary Judgment"). [Doc. 65]. Upon review of the Motion and the related briefing, the applicable case law, and the record before the Court, the Court concludes that oral argument would not materially assist in the resolution of the Motion. For the following reasons, the Motion for Summary Judgment is respectfully **GRANTED in part** and **DENIED in part**.

### BACKGROUND

The background of this action has been discussed by the Court in other orders, *see, e.g.*, [Doc. 49], and accordingly, is limited to the facts that are most relevant to the instant Motion. Plaintiff Charles Williams ("Plaintiff" or "Mr. Williams") was previously incarcerated within the Colorado Department of Corrections, the named Defendant in this case ("CDOC" or "Defendant"). [Doc. 10 at ¶ 2]. He alleges that, while incarcerated, he was assigned to do kitchen work that he was unable to perform due to his disability. [*Id.*

at ¶¶ 12–13].  After Mr. Williams failed to report to work one day, he was dismissed from his kitchen position, which "triggered a reclassification so that he was no longer a 'medium custody' prisoner and [was] instead a 'close custody' prisoner with an accompanying loss of privileges and autonomy."  [*Id.* at ¶¶ 21, 26–27].

Mr. Williams has sued the CDOC under Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, asserting that the CDOC violated these laws by discriminating against him on the basis of and failing to accommodate his disability.[1]  [*Id.* at ¶¶ 26, 38, 43, 51–52].  He raises one claim under each statute, characterizing both as "Intentional Discrimination . . . and Failure to Accommodate" claims.  [*Id.* at 11, 13].  The Amended Complaint seeks economic damages, emotional distress damages, damages for physical pain and suffering, and attorney's fees and costs.  [*Id.* at 15–16].  It also seeks "[a]ll appropriate relief at law and equity that this Court deems just and proper."  [*Id.* at 16].

During the pendency of the case, the CDOC moved to dismiss Plaintiff's claims to the extent that they sought emotional distress damages, arguing that emotional distress damages are not recoverable under the Rehabilitation Act or Title II of the ADA.  [Doc. 38 at 5–9].  The Court agreed with Defendant's argument and granted its motion to dismiss to the extent it sought dismissal of Plaintiff's request for emotional distress damages. [Doc. 49 at 12].

The CDOC now seeks summary judgment in its favor on both of Mr. Williams's claims.  *See* [Doc. 65].  It first contends that it is entitled to summary judgment as a general

---

[1] While Mr. Williams initiated this action pro se, he has been represented by counsel since at least November 8, 2022.  [Doc. 31; Doc. 50].

matter because Mr. Williams has no available relief.  Specifically, it argues that Mr. Williams cannot recover compensatory damages because he cannot show that the CDOC engaged in intentional discrimination, which he contends is required to obtain compensatory damages under the Rehabilitation Act and the ADA, [*id.* at 7], and that he cannot obtain any declaratory or injunctive relief from this lawsuit since he is no longer in CDOC custody, [*id.* at 10].  In the alternative, the CDOC contends that Mr. Williams cannot succeed on the merits of his claims.  As for Plaintiff's claims based on intentional disability discrimination, Defendant argues that Plaintiff cannot show causation.  [*Id.* at 13–14].  And as for his failure-to-accommodate claims, Defendant argues that Plaintiff cannot succeed on these claims because he cannot show that the CDOC failed to accommodate his disability.  [*Id.* at 14–17].

In his response, Mr. Williams defends the merits of his claims and his ability to obtain compensatory damages, [Doc. 68 at 7–15], but he does not respond to Defendant's argument about the availability of equitable relief, *see generally* [*id.*].

## LEGAL STANDARD

Under Rule 56 of the Federal Rule of Civil Procedure, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (citation and quotations omitted).

At summary judgment, a movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the movant has met this initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted).

When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court views the record in the light most favorable to the nonmoving party. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

## UNDISPUTED MATERIAL FACTS[2]

The below material facts are drawn from the record before the Court and are undisputed unless otherwise noted.

---

[2] The Court's Practice Standards with respect to summary judgment require the non-moving party to, "in a separate section of the brief styled 'Statement of Additional Disputed Facts,' set forth in simple, declarative sentences, separately numbered and paragraphed, each additional, material disputed fact that undercuts the movant's claim that it is entitled to judgment as a matter of law." NYW Civ. Practice Standard 7.1D(b)(5). Plaintiff fails to comply with this directive, instead setting forth additional facts in narrative form, without explaining whether he believes these additional facts are disputed or undisputed. *See* [Doc. 68 at 5–7]. Plaintiff's failure to comply with the Practice Standards has hindered the Court's ability to efficiently rule on the Motion for Summary Judgment. Any future filings that violate the Practice Standards may be stricken without substantive consideration.

1.      Mr. Williams was incarcerated within the CDOC from 2014 to 2022.  [Doc. 65 at ¶¶ 1, 3–4; Doc. 68 at ¶¶ 1, 3–4; Doc. 65-1 at 18:1–22].[3]

2.      At all times relevant to this action, Mr. Williams suffered from chronic back pain and bilateral neuropathy.  [Doc. 65 at ¶ 5; Doc. 68 at ¶ 5; Doc. 65-2 at 1].

3.      Mr. Williams was assigned to work various jobs over the course of his incarceration, including work in food service.  [Doc. 65 at ¶¶ 7–8; Doc. 68 at ¶¶ 7–8]; *see generally* [Doc. 65-3].

4.      Mr. Williams was assigned to food service work from approximately September 10, 2019 to September 23, 2019.  [Doc. 65 at ¶ 10; Doc. 68 at ¶ 10; Doc. 65-3 at 1].

5.      On October 4, 2018, a CDOC medical provider entered clinical orders in Mr. Williams's medical file documenting that Mr. Williams had two work restrictions:  "No Standing Over 2 Hours," due to his bilateral peripheral neuropathy, and "No Repetitive Bending at the Waist," due to his chronic back pain.  The work restrictions were to remain in effect until October 4, 2019.  [Doc. 65 at ¶ 6; Doc. 68 at ¶ 6; Doc. 65-2 at 1].

6.      When he reported to his food service assignment in September 2019, Mr. Williams brought a copy of his work restrictions, and his supervisor had access to his list of work restrictions.  [Doc. 65 at ¶ 11; Doc. 68 at ¶ 11; Doc. 65-1 at 65:8–15].

7.      Prior to September 23, 2019, Mr. Williams reported to work every day he was scheduled.  However, every day that he reported, his supervisor reviewed his work

---

[3] When citing to transcripts, the Court cites to the page and line numbers appearing on the original transcript.  In all other instances, the Court cites to the page numbers generated by the CM/ECF system.

restrictions and sent him back to his housing unit without Mr. Williams performing any work.  [Doc. 65 at ¶ 12; Doc. 68 at ¶ 12; Doc. 65-1 at 66:11–19, 82:3–11].

8.      On September 23, 2019, Mr. Williams told a corrections officer that he would not be reporting to work that day due to his back pain.  [Doc. 65 at ¶ 13; Doc. 68 at ¶ 13; Doc. 65-5 at 2].

9.      Mr. Williams received a medical "lay-in" later that day.  [Doc. 65 at ¶ 14; Doc. 68 at ¶ 14; Doc. 65-4 at 1].

10.      Mr. Williams was subsequently terminated from his work assignment.  The reason given for the termination was Plaintiff's failure to work.  [Doc. 65 at ¶ 15; Doc. 68 at ¶ 15; Doc. 65-1 at 96:3–12].

11.      On or about October 3, 2019, Mr. Williams was reclassified from "medium custody" to "close custody."  [Doc. 65 at ¶ 16; Doc. 68 at ¶ 16; Doc. 65-8].  The basis for the reclassification was Mr. Williams's refusal to work.  [Doc. 65 at ¶ 16; Doc. 68 at ¶ 16; Doc. 65-8 at 2].[4]  The reclassification decision was upheld on October 23, 2019, with the stated basis that although Mr. Williams received a medical lay-in on September 23, this was after he failed to report to work, and food service was able to accommodate his work restrictions.  [Doc. 65 at ¶ 17; Doc. 68 at ¶ 17; Doc. 65-9 at 1].[5]

---

[4] Mr. Williams disputes the sincerity of the CDOC's stated grounds for reclassification, but he does not dispute that he was reclassified or that this was the stated reason for the reclassification.  [Doc. 68 at ¶ 16].

[5] Mr. Williams disputes the sincerity of the stated reason for upholding the reclassification, but he does not dispute that this was "the purported basis" for the affirmance.  [Doc. 68 at ¶ 16].

12.     On October 29, 2019, Mr. Williams filed a grievance seeking an interactive accommodation process "for [him] in any/all future job placement."  [Doc. 65 at ¶ 18; Doc. 68 at ¶ 18; Doc. 71 at ¶ 18; Doc. 65-10 at 1].

13.     Mr. Williams received a response to his grievance, noting that there was no evidence that Mr. Williams had ever requested an interactive process with food service staff.  [Doc. 65 at ¶ 19; Doc. 68 at ¶ 19; Doc. 71 at ¶ 19; Doc. 71-1].[6]

14.     Mr. Wiliams never submitted any accommodation requests related to his work assignments after he was terminated from his food service position because, in his view, his work restrictions were sufficient.  [Doc. 65 at ¶ 20; Doc. 68 at ¶ 20; Doc. 65-1 at 75:21–76:6].

15.     Mr. Williams does not claim that he lost income as a result of the events giving rise to this case.  [Doc. 65 at ¶ 23; Doc. 68 at ¶ 23; Doc. 65-7 at 8].

16.     Mr. Williams was released from CDOC custody on April 29, 2022.  [Doc. 65 at ¶ 4; Doc. 68 at ¶ 4; Doc. 65-1 at 18:20–22].

## ANALYSIS

**I.     Plaintiff's Claims**

Before addressing the substance of the Parties' arguments, the Court pauses to ascertain the exact nature of Plaintiff's claims.  As mentioned above, Plaintiff brings two "Intentional Discrimination . . . and Failure to Accommodate" claims, one asserted under

---

[6] Mr. Williams does not dispute the substance of this factual assertion but "[c]ontest[s]" it on the basis that Defendant's cited exhibit "does not contain this information."  [Doc. 68 at ¶ 19].   In its reply brief, Defendant filed a corrected version of the exhibit, which it represents "Williams produced to the CDOC in discovery."  [Doc. 71 at ¶ 19; Doc. 71-1]. Because Mr. Williams does not challenge the substance of the assertion and the CDOC has provided a corrected version of the exhibit, the Court deems this fact undisputed.

the ADA and the other arising under the Rehabilitation Act.  [Doc. 10 at 11, 13].  Because the Tenth Circuit "typically evaluate[s] claims identically under the ADA and Rehabilitation Act," the same legal standards generally apply to both of Plaintiff's claims, *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1312 (10th Cir. 2021); *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 726 (10th Cir. 2011), and unless otherwise noted, the Court applies the case law cited in this Order to both of Plaintiff's claims.

"Courts have recognized three ways to establish a disability discrimination claim: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."  *Beebe v. Colorado*, No. 18-cv-01357-CMA-KMT, 2019 WL 6255763, at *4 (D. Colo. Nov. 22, 2019) (citing *Villa v. D.O.C. Dep't of Corr.*, 664 F. App'x 731, 734 (10th Cir. 2016)).  Intentional discrimination (or disparate treatment) claims are meaningfully distinct from those alleging discrimination due to a failure to accommodate.  "[D]isparate-treatment claims under the ADA allege that the [defendant] discriminated against the [plaintiff] by acting in a discriminatory manner," while "failure-to-accommodate claims do not allege that the [defendant] acted, but rather that the [defendant] failed to act."  *Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 796 (10th Cir. 2020) (en banc) (emphasis omitted).  "That is, failure-to-accommodate claims concern an omission rather than an action; such claims allege that the [defendant] discriminated against the [plaintiff] by not satisfying an affirmative, ADA-created duty to provide reasonable accommodations."  *Id.*

As framed in the Amended Complaint, Plaintiff appears to assert intentional discrimination *and* a failure to accommodate.  *See, e.g.*, [Doc. 10 at ¶¶ 38, 43–45, 51–52].  Indeed, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit")

characterized Mr. Williams as alleging:  "(i) CDOC unreasonably failed to accommodate his disability, and (ii) the discipline CDOC imposed amounts to disability discrimination." [Doc. 22 at 3]; *Williams v. Colo. Dep't of Corr.*, No. 22-1033, 2022 WL 3681255, at *1 (10th Cir. Aug. 25, 2022).  In turn, Defendant's Motion for Summary Judgment attacks the two theories separately, first arguing that insofar as Plaintiff's claims are based on intentional discrimination, Plaintiff cannot show causation.  *See* [Doc. 65 at 13–14].  Then, it asserts that to the extent the claims are based on an alleged failure to accommodate, Plaintiff cannot show "that CDOC failed to provide him reasonable accommodations for his medical conditions with regard to his kitchen job assignment."  [*Id.* at 14–17]; *see also* [*id.* at 13 (noting that Plaintiff "appears to be asserting [claims based on] intentional discrimination and failure to reasonably accommodate a disability")].

Plaintiff's Response to the Motion for Summary Judgment does not distinguish between the two theories, instead addressing Defendant's "two merits arguments as to [his] ADA claims" together.  *See* [Doc. 68 at 7].  Plaintiff makes clear that he proceeds at least under a failure-to-accommodate theory, *see, e.g.*, [*id.* at 7–8], but it is less clear whether Plaintiff is still pursuing a claim based on an intentional discrimination (or disparate treatment) theory, *see, e.g.*, [*id.* at 12 (in responding to Defendant's arguments about causation, criticizing the CDOC's "framing of disability law's causation standard" as "borrowed from intentional discrimination claims, not failure to accommodate claims," and arguing that public entities must "meet the affirmative obligation to accommodate")]. However, given the Tenth Circuit's characterization of Plaintiff's claims; Plaintiff's reference to his "ADA claim<u>s</u>," [Doc. 68 at 7 (emphasis added)]; the apparent conflation between the two theories in Plaintiff's brief, *see, e.g.*, [*id.* at 11–14]; and the fact that

Defendant had an opportunity to raise arguments as to both theories based on its own understanding of Plaintiff's claims, [Doc. 65 at 13–17], the Court will analyze Plaintiff's claims and the pending Motion as if Plaintiff proceeds under both theories.

## II.    Intentional Discrimination

To prevail on an ADA disparate treatment claim, the plaintiff must prove that "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability."  *Crane*, 15 F.4th at 1312 (quotations omitted).   "To establish a prima facie claim under § 504 [of the Rehabilitation Act], a plaintiff must demonstrate that (1) plaintiff is handicapped under the Act; (2) he is otherwise qualified to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff based upon a disability." *Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1262 (10th Cir. 2018) (cleaned up).

Although the Rehabilitation Act and the ADA are often subject to identical analyses, they employ different causation standards:  the Rehabilitation Act requires that the plaintiff's disability be the "sole cause" of the discrimination, while the ADA requires a lesser but-for causation standard.   *Crane*, 15 F.4th at 1313; *see also Johnson ex rel. Johnson v. Thompson*, 971 F.2d 1487, 1493 (10th Cir. 1992) (for Rehabilitation Act claims, "[t]he word *solely* provides the key:  the discrimination must result from the [disability] and from the [disability] alone."); *Crane*, 15 F.4th at 1313 (the ADA's "but-for"

causation standard requires only that the discrimination be "by reason of" the plaintiff's disability).

Plaintiff contends that the CDOC discriminated against him by punishing him because he was unable to work. [Doc. 68 at 11]. Defendant contends that Plaintiff cannot prove that his reclassification was the cause of the alleged disability discrimination because "[t]he evidence shows that his reclassification was the result of his refusal to appear for his job assignment on a particular day without prior permission, not the fact that he had medical conditions or had allegedly sought to accommodate those conditions at an earlier date." [Doc. 65 at 14].[7] Mr. Williams disagrees, arguing that "his <u>write-up</u> [for failure to work] was . . . inseparable from his disability" because his absence from work and the subsequent write-up were "a direct result of his medical conditions," such that "his <u>write-up</u> . . . thereby satisfie[s] both the ADA and the Rehabilitation Act's

---

[7] The Court construes Defendant's causation argument as related only to Plaintiff's intentional discrimination claims because the argument about the true cause of the reclassification makes little sense if directed to Plaintiff's failure-to-accommodate claims. The ADA and the Rehabilitation Act impose an affirmative obligation on public entities to provide reasonable accommodations to people with disabilities.  *Hamer v. City of Trinidad*, 924 F.3d 1093, 1104 (10th Cir. 2019); *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 115 (3d Cir. 2018).  For failure-to-accommodate claims, the "causation" element "is satisfied . . . as soon as the [public entity], with adequate notice of the [individual's] request for some accommodation, fails to provide a reasonable accommodation."  *Exby-Stolley*, 979 F.3d at 795 (emphasis omitted); *cf. Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1178 n.12 (10th Cir. 1999) (en banc) (explaining that, in failure-to-accommodate cases, "Congress has already determined that a failure to offer a reasonable accommodation to an otherwise qualified disabled [person] *is* unlawful discrimination"); *see also Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454–55 (5th Cir. 2005) ("[B]oth the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals. Where a defendant fails to meet this affirmative obligation, the cause of that failure is irrelevant." (footnote omitted)); *Douglas v. Muzzin*, No. 21-2801, 2022 WL 3088240, at *6 (6th Cir. Aug. 3, 2022) ("When a plaintiff shows that the proposed modification is needed to avoid the denial of services or benefits, the causation requirement is satisfied.").

causation requirements." [Doc. 68 at 13 (emphasis added)].  In so arguing, Plaintiff does not substantively discuss the threshold causation requirements of either the ADA or the Rehabilitation Act.  [*Id.*].[8]

Despite Plaintiff's focus here on the write-up for missing work, he repeatedly emphasizes throughout his brief that his claims are based on his reclassification to a "close custody" prisoner, *see, e.g.*, [Doc. 68 at 9, 11–13], and he does not elsewhere claim that the interim write-up was the discriminatory act, instead stating that he "does not argue that" the corrections officer who wrote him up "did anything wrong," [*id.* at 15]. Indeed, he asserts that he "did not report to work because of his disability, and the failure to report to work is what caused him to lose meaningful access to many of the prison's services," i.e., be reclassified to close custody status.  [*Id.* at 13].  The Court finds Plaintiff's position sufficiently clear and thus focuses on the reclassification as the discipline imposed by the CDOC that amounts to disability discrimination. [Doc. 22 at 3].

Plaintiff's position on causation is essentially an argument that even if he was reclassified due to misconduct (i.e., missing work without notice), that misconduct was caused by his disability, and any discipline for that misconduct was, therefore, also caused by his disability.  In the employment context under Title I of the ADA, the Tenth Circuit has held that "the ADA anti-discrimination provision 'does not contemplate a stark dichotomy between "disability" and "disability-caused misconduct," but rather protects

---

[8] Plaintiff also confusingly asserts that "he was reclassified for a different reason: retaliation," suggesting that he was actually reclassified in retaliation for filing a separate civil lawsuit.  [Doc. 68 at 9, 13].  It is unclear to the Court how this position is consistent with Plaintiff's belief that he was reclassified because of his disability, or how Defendant could be liable for a violation of the Rehabilitation Act, which requires disability to be the sole cause of the adverse action, when he identifies an additional, separate basis.

both.'" *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1134 (10th Cir. 2003) (quoting *McKenzie v. Dovala*, 242 F.3d 967, 974 (10th Cir. 2001)).   In other words, "the [ADA] prohibits employers from drawing a distinction between a disability and disability-caused conduct—except for drug and alcohol abuse—and then rely[ing] upon the disability-caused conduct as legitimate grounds for terminating employment." *Cummings v. Norton*, 393 F.3d 1186, 1190 (10th Cir. 2005); *see also Dennis v. Fitzsimons*, 850 F. App'x 598, 601–02 (10th Cir. 2021) (Rehabilitation Act); *but see Walton v. Spherion Staffing LLC*, 152 F. Supp. 3d 403, 407 (E.D. Pa. 2015) ("A survey of federal case law supports Defendant's argument that a disabled person can be lawfully terminated for disability related misconduct—so long as the employer's explanation is not a pretext for discrimination." (collecting cases)).

Neither Party engages with the precise causation issue presented in this case—whether Plaintiff can satisfy his causation burden on his intentional discrimination claims by showing that the alleged discriminatory act (his reclassification) was caused by an event (his absence from work) that was *itself*, in his view, caused by his disability.   The Court cannot raise arguments on behalf of the Parties and declines to wade into a substantive analysis sua sponte.   At minimum, the Court observes that Plaintiff has adduced evidence that due to his disability, he could not attend work on September 23, 2019, [Doc. 65-5 at 2; Doc. 68-1 at 91:1–18]; that because he did not attend work, he was written up, [Doc. 65-5 at 1–2]; and that he was reclassified from "medium custody" to "close custody" because of his absence from work and his write-up, [Doc. 65-8 at 2; Doc. 68-1 at 96:19–24].   Based on this evidence, and absent any presentation of legal authority or argument by the Parties to the contrary, the Court determines a reasonable jury could

conclude that Plaintiff's disability-caused conduct caused his reclassification.  *Cf. Sedor v. Frank*, 42 F.3d 741, 746 (2d Cir. 1994) (in employment case, explaining that "[t]he causal relationship between disability and [adverse] decision need not be direct, in that causation may be established if the disability caused conduct that, in turn, motivated the employer to discharge the employee; however, to satisfy the 'solely' part of the 'solely by reason of' element, the disability must have been the only cause of the discharge-triggering conduct.").

To be clear, the Court does not decide as a matter of law that Plaintiff's theory of causation is legally sufficient in this case.  Rather, the Court's ruling is based on its determination that, because Defendant has not made arguments or cited authority demonstrating that Plaintiff's theory is *not* applicable in this case, *see* [Doc. 71 at 6–9], the Court cannot grant summary judgment in Defendant's favor.  The Motion for Summary Judgment is therefore **DENIED** to the extent it seeks judgment in Defendant's favor on the intentional discrimination claims.

## III.   Failure to Accommodate

Next, Defendant argues that Plaintiff cannot succeed on his failure-to-accommodate claims.   "To establish a Title II violation under a reasonable accommodation theory, [the plaintiff] must show:  (1) he is a qualified individual with a disability; (2) he was 'excluded from participation in or denied the benefits of some public entity's services, programs, or activities' and (3) such exclusion or denial of benefits was by reason of his disability." *Brooks v. Colo. Dep't of Corr.*, 12 F.4th 1160, 1167 (10th Cir. 2021) (quoting *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999)); *see also* 29

U.S.C. § 794(a) (the Rehabilitation Act prohibiting exclusion from "any program or activity receiving Federal financial assistance").[9]

In the Motion, the CDOC argues that Plaintiff cannot show a failure to accommodate because the CDOC provided him work restrictions, and because Plaintiff never actually performed work in the kitchen, he cannot prove that those accommodations were inadequate. [Doc. 65 at 16–17]. Defendant's argument is based on its reasonable understanding that Plaintiff's failure-to-accommodate claims are based on an alleged failure to accommodate Plaintiff in his kitchen work assignment. *See* [*id.* at 15–17]; *see also* [Doc. 10 at ¶ 38 (Mr. Williams alleging that the CDOC "fail[ed] to provide [him] a workplace accommodation"); *id.* at ¶ 44 (Mr. Williams alleging that the CDOC "failed to accommodate [his] disability by assigning him work he could not do with his limitations" and "failing to accommodate those limitations")].

In his Response, Plaintiff clarifies the nature of his failure-to-accommodate claims. Plaintiff stresses that, in his view, the alleged failure to accommodate was not related to his work restrictions or kitchen assignment, but the CDOC's reclassification of him. *See, e.g.*, [Doc. 68 at 9 ("[T]he discriminatory act was the CDOC's reclassification of Williams as a close custody inmate whereas he was previously classified as medium custody. *This* was the moment when CDOC failed to accommodate his disability." (quotation and citation omitted)); *id.* at 8–9 ("CDOC's treatment of Williams's disability may indeed have constituted a reasonable accommodation but for one fact: CDOC severely punished him for failing to report to a job site in the midst of a medical emergency when his own

_____

[9] Neither Party argues that a meaningfully different standard applies to Rehabilitation Act claims.

supervisor did not allow him to work because of his disability, even on his best days."); *id.* at 12 (arguing that the CDOC's decision to "prevent him from working in the kitchen and then severely punish him for not" working "was an unreasonable failure to accommodate his disabilities under federal disability law"); *id.* at 15 (arguing that, by reclassifying Plaintiff, Defendant "knowingly disregarded a risk to [Plaintiff's] right to a reasonable accommodation under federal disability law")]; *see also* [Doc. 44 at 1 (Plaintiff arguing in his response to Defendant's motion to dismiss that his "claims center on his September 26, 2019 firing from the kitchen for work he was physically incapable of doing <u>as well as the firing's consequences</u>." (emphasis added))].

Indeed, despite Defendant's affirmative argument in its Motion for Summary Judgment that "Williams cannot show that CDOC failed to provide him reasonable accommodations for his medical conditions with regard to his kitchen job assignment," [Doc. 65 at 16], Plaintiff does not now argue that there was any failure to accommodate with respect to his work assignment, *see generally* [Doc. 68], instead expressly disclaiming any such claim, *see* [*id.* at 11 ("Williams . . . has never argued that his work restrictions were insufficient.")].  Confusingly, though, Plaintiff also argues that "[m]any accommodations would likely have been reasonable, perhaps including finding a kitchen task [Plaintiff] could do, simply keeping him in his phantom kitchen position, or transferring him to a different category of job that he was physically capable of doing,"[10] [*id.* at 11–12], which suggests that Plaintiff *does* base his failure-to-accommodate claims on his kitchen

---

[10] Defendant construes Plaintiff's response the same way.  *See* [Doc. 71 at 4–5 (recognizing that Plaintiff "argues that his *reclassification*, rather than his work assignment, was a failure to accommodate in addition to being an instance of disability discrimination.")].

assignment.  But given Plaintiff's insistence that the alleged failure to accommodate was the reclassification, not the kitchen work assignment, the Court will follow Plaintiff's lead and focus only on the reclassification as the alleged failure to accommodate.[11]

The CDOC replies, in light of Plaintiff's clarification, that Plaintiff's position "is unsupported by law and the record."  [Doc. 71 at 5].  It first notes that Plaintiff provides no legal authority for the proposition that inmate classification is a program, service, or activity under the ADA or the Rehabilitation Act.  [*Id.*].  Then, it contends that Plaintiff "fails to establish that any reclassification-related accommodation existed, let alone that it was reasonable."  [*Id.*].[12]

For many reasons, the Court agrees with the CDOC.  Plaintiff's characterization of the reclassification—i.e., an affirmative disciplinary action taken in response to Plaintiff's absence from work—as a "failure to accommodate" does not squarely fit within the contours of a classic failure-to-accommodate claim, which traditionally "do[es] not allege that the [defendant] *acted*, but rather that the [defendant] *failed to act*."  *Exby-Stolley*, 979

---

[11] To the extent Plaintiff ever raised failure-to-accommodate claims based on his kitchen work assignment, the Court concludes that he has abandoned those claims by not responding to the arguments challenging those claims.  *See Amica Life Ins. Co. v. Wertz*, 272 F. Supp. 3d 1239, 1245 n.4 (D. Colo. 2017); *Hinsdale v. City of Liberal*, 19 F. App'x 749, 769 (10th Cir. 2001).

[12] The Court does not construe these arguments as "new" arguments necessitating the filing of a surreply.  *See EEOC v. Outback Steak House of Fla., Inc.*, 520 F. Supp. 2d 1250, 1260 (D. Colo. 2007) ("When a party puts forth new arguments in a reply brief, a court may avoid error by either:  (1) choosing not to rely on the new arguments in determining the outcome of the motion; or (2) permitting the nonmoving party to file a surreply.").  The arguments raised by Defendant in its reply brief are made directly in response to the arguments and clarification in Plaintiff's Response.  *See In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1119 (10th Cir. 2015) ("While it is true that we generally do not 'review issues raised for the first time in a reply brief, we make an exception when the new issue argued in the reply brief is offered in response to an argument raised in the [response] brief.'" (quoting *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1166 n.3 (10th Cir. 2003))).

F.3d at 796.   In a typical failure-to-accommodate claim, the plaintiff alleges that his disability precludes him from meaningful participation in or the benefit of certain programs, services, or activities, and that the defendant failed to provide reasonable accommodations that would permit the plaintiff to enjoy the benefits of those programs, services, or activities.

But here, Plaintiff's failure-to-accommodate claims rest on a preferred alternative disciplinary outcome, which the Court cannot conclude would amount to an "accommodation."  *Cf. Profita v. Regents of the Univ. of Colo.*, No. 16-cv-03032-RBJ, 2017 WL 1023379, at *3 (D. Colo. Mar. 15, 2017) ("[A]t least in the employer-employee context, a request for relief that amounts to 'retroactive leniency' for an employee's past misconduct, even if that misconduct resulted from the employee's alleged disability, is not a request for a reasonable accommodation as a matter of law."), *aff'd*, 709 F. App'x 917 (10th Cir. 2017); *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1318 (10th Cir. 2017) ("[A] denied request for retroactive leniency cannot support an accommodation claim."); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465–66 (4th Cir. 2012) (concluding that the plaintiff's request for readmission after dismissal for unprofessional acts was "not a disability accommodation, but a second chance" and that denial of such a request was "not a cause of action under the ADA" (quotation omitted)).  Plaintiff does not explain how the reclassification amounts to a failure to accommodate,[13] and the Court finds that these claims are simply repackaged intentional discrimination claims.

---

[13] Plaintiff cites to *Gandy v. Zavaras*, No. 09-cv-00205-CMA-KMT, 2010 WL 551408 (D. Colo. Feb. 11, 2010), stating that this case "[held] that an incarcerated plaintiff stated an ADA claim when CDOC submitted him to urinary drug tests that he struggled to perform because of a medical condition that made urinating difficult and then sanctioned him for failing to submit a sample."  [Doc. 68 at 9].  But the *Gandy* court did not hold that the

Even setting aside the fact that Plaintiff's failure-to-accommodate claims appear non-viable on their face, there is no evidence that Plaintiff requested an accommodation with respect to the reclassification or that the need for an "accommodation" related to the reclassification was obvious, so as to put the CDOC on notice of the need for an accommodation.  *See Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1198 (10th Cir. 2007); *see also id.* at 1196 ("Before a public entity can be required under the ADA to provide a disabled individual an auxiliary aid or service, a public entity must have knowledge of . . . the individual's need for an accommodation.").  Nor does Plaintiff identify *any* "accommodation" alternative to reclassification, instead proposing *work-related* accommodations for his kitchen work assignment—which Plaintiff has expressly *disclaimed* as a basis for his failure-to-accommodate claims.  *See* [Doc. 68 at 11–12]; *see also J.H. ex rel. J.P. v. Bernalillo Cnty.*, 806 F.3d 1255, 1262 (10th Cir. 2015) (affirming summary judgment for the defendant where the plaintiff failed to explain "what [the defendant] should have done to accommodate" the plaintiff's disability).  As a result, Plaintiff has not identified any genuine dispute of fact that would preclude summary judgment on his failure-to-accommodate claims.

In sum, the Court finds that Plaintiff has not set forth legally viable failure-to-accommodate claims and has not demonstrated any basis for the Court to deny the Motion for Summary Judgment on these claims.  Accordingly, the Motion for Summary Judgment is **GRANTED** to the extent it seeks summary judgment on Plaintiff's failure-to-accommodate claims.

---

sanctions themselves amounted to a failure to accommodate the plaintiff's disability; indeed, the *Gandy* plaintiff had identified alternative drug testing methods that would accommodate his disability.  *See Gandy*, 2010 WL 551408, at *7.

IV.     **Types of Relief Available**

Aside from its merits arguments, the CDOC also argues that it is entitled to summary judgment because there are no available damages in this case. [Doc. 65 at 7–12]. The Court addresses these arguments only with respect to Plaintiff's surviving intentional discrimination claims.

A.     **Equitable Relief**

As mentioned above, Plaintiff's operative pleading requests, in addition to specific monetary damages, "[a]ll appropriate relief at law and equity that this Court deems just and proper." [Doc. 10 at 16]. The CDOC argues that, to the extent this catch-all statement could be construed as a request for either injunctive or declaratory relief, these requests for relief have been mooted by Plaintiff's release from CDOC custody. [Doc. 65 at 10–12]; *see also Jordan v. Sosa*, 654 F.3d 1012, 1025–28 (10th Cir. 2011) (explaining how certain requests for declaratory or injunctive relief may be mooted once the prisoner is no longer incarcerated, but also noting some requests that may remain). Mr. Williams does not respond to this argument or clarify whether he seeks equitable relief and, if so, the kind of equitable relief sought. *See generally* [Doc. 68].

The Court agrees with Defendant that Mr. Williams is not entitled to injunctive or declaratory relief in this case, albeit for slightly different reasons than those furthered in the Motion. Because Plaintiff fails to address Defendant's argument in his Response and fails to identify any specific injunctive or declaratory relief he seeks, the Court cannot conduct any substantive analysis as to the mootness of any potential request for injunctive or declaratory relief. *See Jordan*, 654 F.3d at 1025–28 (noting instances where a prisoner's release from custody may not moot a request for declaratory or injunctive

relief).  Instead, to the extent Plaintiff ever did seek injunctive or declaratory relief, Mr. Williams's failure to respond to Defendant's arguments challenging his ability to request that relief amounts to abandonment of any such request.  *See Amica Life Ins. Co. v. Wertz*, 272 F. Supp. 3d 1239, 1245 n.4 (D. Colo. 2017); *Hinsdale v. City of Liberal*, 19 F. App'x 749, 769 (10th Cir. 2001).[14]  Accordingly, the Motion for Summary Judgment is **GRANTED** to the extent it seeks a legal determination that Mr. Williams is not entitled to any declaratory or injunctive relief for his remaining claims in this case.

### B.    Monetary Damages

The CDOC also contends that Mr. Williams is barred from recovering any money damages in this case.  [Doc. 65 at 7].  First, it asserts that Mr. Williams cannot recover any compensatory damages because "he cannot show that the CDOC engaged in intentional discrimination."  [*Id.*].  And second, it argues that Mr. Williams is barred from obtaining punitive damages because those damages are categorically unavailable under the Rehabilitation Act and Title II of the ADA.  [*Id.* at 9].  Mr. Williams does not respond to the CDOC's argument about punitive damages (or clarify whether he even seeks those damages).  *See generally* [Doc. 68].  The Court agrees with the CDOC that punitive damages are unavailable to Mr. Williams for his remaining claims in this case.  *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("[P]unitive damages . . . may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act.").

---

[14] Furthermore, while the Court is mindful that Plaintiff is not limited to the specific relief requested in his pleading, *see* Fed. R. Civ. P. 54(c) (explaining that a "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"), the Amended Complaint's failure to request *any* sort of specific injunctive or declaratory relief suggests to the Court that Plaintiff does not seek that relief.

As for compensatory damages,[15] Defendant argues that "[t]o recover compensatory damages under Title II of the ADA, . . . the Tenth Circuit[] require[s] a showing of intentional discrimination."  [Doc. 65 at 7].  However, the case Defendant cites in support sets that standard for Rehabilitation Act cases.  *See Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999) ("We . . . hold that entitlement to compensatory damages under section 504 of the Rehabilitation Act requires proof the defendant has intentionally discriminated against the plaintiff.").  As of 2019, the Tenth Circuit had not definitively resolved that question with respect to Title II of the ADA.  *See Hamer v. City of Trinidad*, 924 F.3d 1093, 1108 (10th Cir. 2019) (stating that the Tenth Circuit has only "suggested" that intentional discrimination is required to recover compensatory damages under Title II); *see also Cropp v. Larimer Cnty.*, 793 F. App'x 771, 779 n.9 (10th Cir. 2019) ("[W]e have not resolved whether the [intentional discrimination requirement applies to claims under] Title II.").  However, Mr. Williams agrees with the CDOC's position.  *See* [Doc. 68 at 14 ("As CDOC explained in its motion for summary judgment, to obtain damages under federal disability law a plaintiff must demonstrate that a public entity was aware that there was a substantial risk to plaintiff's federal protected right but [the defendant] failed to act upon that chance.")]; *see also Powers*, 184 F.3d at 1153 (explaining that intentional discrimination can be inferred

---

[15] The Court notes that it is undisputed that Plaintiff has not lost any income or earning capacity due to the events giving rise to this case.  [Doc. 65 at ¶ 23; Doc. 68 at ¶ 23].  Nor are there any allegations in either the Amended Complaint or the summary judgment briefing that Plaintiff suffered any physical pain and suffering resulting from Defendant's conduct.  *See generally* [Doc. 10; Doc. 68].  And the Court has already determined that compensatory damages in the form of emotional distress damages are barred.  [Doc. 49 at 12].  Thus, it appears that the only remaining money damages are nominal damages, which are compensatory in nature.  *Griffin v. Steeltek, Inc.*, 261 F.3d 1026, 1028 (10th Cir. 2001).

through evidence of deliberate indifference).  Accordingly, the Court will assume that, to obtain compensatory damages under Title II of the ADA, Plaintiff must prove intentional discrimination.  *See Cropp*, 793 F. App'x at 779 (assuming, without deciding, that the plaintiff had to "show intentional discrimination to prevail on what remain[ed] of his failure-to-accommodate claims" because he did not challenge the district court's holding on that issue and had instead "expressly concede[d] the district court was correct on th[at] point").

"A plaintiff can establish intentional discrimination by presenting evidence that (1) the defendant's conduct was fueled by discriminatory animus, or (2) the defendant acted with deliberate indifference to the strong likelihood that pursuit of its questioned policies would likely result in a violation of federally protected rights."  *Id.* at 780 (cleaned up).  "The test for deliberate indifference in the context of intentional discrimination comprises two prongs:  (1) 'knowledge that a harm to a federally protected right is substantially likely,' and (2) 'a failure to act upon that likelihood.'"  *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1229 (10th Cir. 2009) (alteration omitted) (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).  The "failure to act" prong requires "conduct that is more than negligent."  *Id.* (quotation omitted).

The CDOC argues that Mr. Williams cannot show intentional discrimination because he cannot show that the CDOC had knowledge that there was a substantial likelihood that his federally protected rights would be harmed or that any CDOC official failed to act upon that likelihood.  [Doc. 65 at 8].  The CDOC maintains that the undisputed facts show that he was terminated—and reclassified—for failing to report to work, and that this evidence "shows that CDOC reasonably reacted to Williams's unexcused failure to report for his job assignment."  [*Id.*].

Mr. Williams responds that the CDOC "was aware of and disregarded a risk that it was failing to accommodate Williams's disabilities"[16] when it reclassified him because a number of unnamed CDOC employees knew about his disabilities but he was nevertheless reclassified, which he describes as "the optional and difficult-to-understand choice to severely punish Williams for conduct that was . . . the result of his disability." [Doc. 68 at 14–15].  He notes the following:  (1) CDOC medical staff diagnosed Plaintiff with degenerative disc disease and bilateral neuropathy and staff members were treating him for those conditions, [Doc. 68-1 at 10:11–11:8]; (2) CDOC medical staff implemented his work restrictions, [Doc. 65-2 at 1]; (3) Plaintiff informed CDOC officials that he would miss work on September 23, 2019 due to his back pain, [Doc. 65-5 at 2]; and (4) after he missed work on September 23, CDOC medical staff provided him a lay-in stating that he was ineligible to work starting that day, [Doc. 65-4 at 1].  And elsewhere in his Response, Plaintiff notes that Corrections Officer Bryan Gonzales ("Officer Gonzales") testified at his deposition that it was atypical that one write-up would result in an inmate's reclassification.  *See* [Doc. 68 at 10; Doc. 68-2 at 53:2–17, 57:4–9].[17]  Plaintiff concludes

---

[16] Despite the Court's determination that Plaintiff does not have viable failure-to-accommodate claims, the Court construes this argument as applying to his intentional discrimination claims.

[17] Defendant contends that the Court should not consider Officer Gonzales's deposition testimony because it is "speculative and lacks foundation" because Officer Gonzales "was not responsible for classification or housing decisions and could not testify as to whether or how an incident report might trigger a reclassification."  [Doc. 71 at 7]; *see also* [*id.* at 3].  However, the Court finds that accepting this argument would impermissibly usurp the jury's fact-finding role, as Defendant's arguments inherently go to the weight of Officer Gonzales's testimony and his credibility.  Accordingly, for purposes of this Motion, the Court may consider this evidence.  And furthermore, even if the Court declined to consider this evidence, it would still find a genuine dispute of material fact precluding summary judgment.

that the CDOC "was aware that [he] was unable to work in the kitchen because of his disabilities and severely punished him for a failure to work anyway."  [Doc. 68 at 15].

The Court finds that Plaintiff has identified a genuine dispute of fact with respect to whether the CDOC was deliberately indifferent in this case by adducing evidence that CDOC officials knew of his disabilities, knew of his position that he was unable to work on September 23, 2019 due to his back pain, knew that CDOC medical staff agreed that he was unable to work on that day, and nevertheless reclassified him to close custody status based on his failure to work.[18]  Accordingly, summary judgment on the issue of compensatory damages in the form of nominal damages is not warranted.

In sum, Plaintiff's claims based on intentional discrimination may proceed, but his failure-to-accommodate claims may not.  Plaintiff is not entitled to recover any declaratory or injunctive relief, punitive damages, emotional distress damages, or economic damages in this case.  Given the very narrow relief that remains available to Plaintiff, the Parties are strongly encouraged to discuss whether alternative dispute resolution would be preferable to trial in this case.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)    The CDOC's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(a)

[Doc. 65] is **GRANTED in part** and **DENIED in part**;

---

[18] In its reply brief, the CDOC argues for the first time that there is no "evidence that any CDOC employee who was actually involved in [Plaintiff's] reclassification was aware of his disabilities, knew Williams contended his disabilities—rather than his dissatisfaction with the job assignment—gave rise to his failure to appear for work, but consciously went ahead and reclassified him as a close custody inmate despite that knowledge."  [Doc. 71 at 10].  The argument could have been raised in the Motion for Summary Judgment but was not.  *See* [Doc. 65 at 7–9].  The Court deems this argument waived.

(2)    The Motion is **DENIED** to the extent it seeks judgment in Defendant's favor on Plaintiff's intentional discrimination claims;

(3)    The Motion is **GRANTED** to the extent it seeks judgment in Defendant's favor on Plaintiff's failure-to-accommodate claims;

(4)    The Motion is **GRANTED** to the extent it seeks summary judgment on Plaintiff's requests for injunctive relief, declaratory relief, punitive damages, and economic damages; and

(5)    It is **ORDERED** that a telephonic Status Conference is **SET** for **July 11, 2024** at **10:00 a.m.**, for purposes of setting the trial and Trial Preparation Conference in this matter.  Counsel for the Parties shall participate using the following dial-in information:  **888-363-4749; Access Code: 5738976#**.  The Parties should be prepared to discuss at the Status Conference how many days they anticipate needing for trial and their calendar availability for trial.

DATED:  June 20, 2024                              BY THE COURT:

Nina Y. Wang
United States District Judge