**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-02595-NYW-NRN

CHARLES WILLIAMS,

     Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

     Defendant.

_____

**VOIR DIRE**
_____

**EXPLANATION OF VOIR DIRE**

     I want to explain to you the process we will use to select a jury.

     Twenty-four of you are sitting in the gallery right now.  Your names were drawn at random by a computer from the pool of people who were called for jury duty.  I will refer to you either by juror number or name.  If I refer to you by juror number, it is not to be impersonal but just to make sure the record is clear of what is happening in jury selection.  I am also apologizing ahead of time if I mispronounce your name.

     Eventually we will select eight jurors to serve on this jury.  Therefore, it is obvious that we cannot use the services of all of you.  The process of selecting a jury is called *voir dire*—French words which mean "to speak the truth."  The purpose of *voir dire* is to determine whether members of the jury can be fair and impartial in determining the facts of this case and whether they are committed to following the law, rather than their personal feelings in rendering a verdict.  To accomplish that, I will be asking you each a

series of questions which I hope will identify those of you who can and would serve fairly and impartially.

Fourteen members of the jury panel will be called into the jury box.  These 14 members are randomly generated by the Clerk's Office computer.  The potential jurors sitting in seats 1 to 14 are referred to as the "jury panel."  After the 14 members of the panel are in the jury box, all of you, regardless of whether you are in the first 14 seats, will take an oath to truthfully answer all questions concerning whether you can serve as a juror in this case.  After the oath is administered, I will ask you questions concerning your ability to be fair and impartial jurors.

Once *voir dire* examination begins, the rules are simple, but significant.

(1)    I am going direct a series of questions to the people sitting in seats 1–14 that can be answered "yes" or "no."  Please raise your hand if you would answer "yes."

(2)    If you are not in seats 1–14, I still need you to listen to the question and note your answers on the card that was given to you.  Some of you may move into seats 1–14 during the course of jury selection.

(3)    There are two microphones that will be passed to you for you to use when answering questions.  You will need to speak your explanation into the microphone so it can be recorded.  Everything we are doing today is being recorded by my court reporter.

(4)    When begin speaking, please state your juror number and name.

(5)    Please answer each question completely and truthfully.

(6)    If you don't hear or understand or if you have questions or concerns, please speak up.  If you wish to respond to a previous question to which you did not then respond, please speak up.

(7)    If you wish to modify or supplement a previous response you made, please raise your hand.

(8)    My questions are not designed to offend, embarrass, or insult you; if they do, I apologize.  But, if the question applies to you and you feel that a matter is too personal to disclose to the whole courtroom, just let me know and I

will arrange to have you provide your answer privately to me and the Parties.

(9)    If you do not respond affirmatively, I will presume that you have answered my question "no."

The Parties may excuse members of the panel for cause.  If someone is excused for cause, a member of the jury panel will move into that empty seat so that we always have 14 members in the panel.  After the questioning is completed, the Parties must excuse six members of the panel without stating any reason.  You should not be embarrassed or consider it any reflection on you if you are one of those excused.

If your name is called, please step forward and take your place in the jury box where the courtroom deputy directs you.

The next order of official business is for the Courtroom Deputy to administer the required oath to the entire jury panel.  Just like a witness in a case, you will be administered an oath to tell the truth and you must answer the questions I ask you truthfully and completely.

## CIVIL VOIR DIRE OATH

Will all prospective jurors please stand and be sworn?  At the end of the oath,

answer "I do."

You and each of you do solemnly swear or affirm, under the pains and

penalties of perjury, that you will give entirely true answers to any questions

asked of you which relate to your qualifications to serve as a juror in this

case now before the Court.

## JUROR QUALIFICATIONS

*[Qualifications: 28 U.S.C. § 1865(b) states that a person is qualified to serve as a juror if he or she (1) is a citizen of the United States; (2) is at least 18 years of age; (3) is able "to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form"; (4) is able to speak the English language; (5) is mentally and physically capable of rendering satisfactory jury service; and (6) does not have "a charge pending against him for the commission of, or has [not] been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year" or "his civil rights have . . . been restored."]*

Please raise your hand if you:

(1)     Are not a citizen of the United States;

(2)     Are not at least 18 years old;

(3)     Are not able to read, write, and understand the English language;

(4)     Think you are not mentally or physically capable of serving on this jury.

**JUROR – UNDUE HARDSHIP**

This trial is set for three days beginning today, which means it will last until at least Wednesday.  So if you are selected for the jury, you will need to make arrangements to be present every day this week with your employer, employees, and family.

I realize that it is hard work to be a juror.  We make you sit listen and forbid you to talk about anything you heard or observed until the end of the trial.  I have a trial schedule, which will hopefully result in your not having to search for parking and will get you out of downtown Denver before rush hour.  Trial will begin each morning at 9:00 a.m.  You will get a 15-minute mid-morning break at about 10:30 and a 45-minute lunch break at about 12:30.  Provided everyone shows up on time, we will recess for the day no later than 4:00 p.m. each day, unless I have cleared it that everyone can stay later.

No one will find this convenient, but our judicial system continues to depend upon the personal sacrifice of millions of jurors, just like you.  For some of you, however, this length of service may present an undue hardship – and I emphasize that adjective – undue.  Excuses based on the grounds of extreme and undue hardship are very limited and granted only in exceptional instances.  Please understand that by law I cannot and will not excuse you simply because it is an inconvenience for you to be here.

In order to determine whether there are any jurors that need to be excused based on undue hardship, I will ask you to raise your hand if you answer "yes" to any of these questions.

(1)     Is there anyone who is asking to be excused on the grounds of extreme and undue hardship?   Explain.

(2)    Do any of you have conflicts that will prevent you from giving your full attention to this case until at least Wednesday, and until the jury reaches a verdict?

(3)    Do any of you have any physical problems, conditions or limitations that might hamper your services as a juror, such as impaired hearing or eyesight, or back or other problem that would make it difficult to remain seated for two hours at a time?

(4)    During the trial, you will be unable to be reached and you will be unable to contact anyone for long periods of time.  Also, during jury deliberations, you will be required to provide all electronic devices to Ms. Buchanan for safekeeping.  Does this pose a significant issue to any of you?

## VOIR DIRE GENERAL QUESTIONS

(1)    Do any of you or anyone in your immediate family currently have or in the past had any relationship or business dealings with Charles Williams or anyone in his family that you know of?  Explain.

      a.    Anything about that experience that would prevent you from being fair and impartial in this case?

(2)    Do any of you or anyone in your immediate family currently have or in the past had any relationship or business dealings with the Colorado Department of Corrections or anyone employed by the Colorado Department of Corrections that you know of?  Explain.

      a.    Anything about that experience that would prevent you from being fair and impartial in this case?

(3)    Do any of you or anyone in your immediate family currently have or in the past had any relationship with, connection to, or business dealings with law enforcement? Explain.

      a.    Anything about that experience that would prevent you from being fair and impartial in this case?

(4)    Do any of you know the Plaintiff's lawyers, Miriam Nemeth or Samuel Weiss, their organization, Rights Behind Bars, or any member of their staff or any member of their respective families?

(5)    Do any of you know the Defendant's lawyers, Ann Stanton, Gregory Bueno, or Kristin Lindemann, or any member of the staff at the Colorado Attorney General's Office, or any member of their respective families?

(6)     This case involves allegations of disability discrimination in the context of a prison work assignment.  Have you or anyone in your family ever been incarcerated?

a.     When, where, in what capacity?

b.     Anything about that experience that prevents you from being fair and impartial in this case?

(7)     Have an of you been inside of a jail or prison?

a.     When, where, in what capacity?

b.     Anything about that experience that prevents you from being fair and impartial in this case?

(8)     Do any of you feel that, because of the subject matter of this case, the people involved, or similar experiences you or your family or friends may have had to those at issue in this case, you may not be able to be fair and impartial to both sides?

(9)     Have you or anyone in your family ever felt like you were discriminated against in the context of employment?

a.     When, where, in what capacity?

b.     Anything about that experience that prevents you from being fair and impartial in this case?

(10)    Are you or is anyone in your immediate family a physician or a medical practitioner?

(11)    Has anyone here sustained an injury to your back that required medical attention?  Explain.

a.     Anything about that experience that prevents you from being fair and impartial in this case?

(12)    Have any of you, your family, or your close friends ever had an injury that limits your ability to stand?

   a. Please explain.

   b. Anything about that experience that prevents you from being fair and impartial in this case?

(13)    Are you, any of your family members, or any of your friends dealing with a disability?

   a. If so, what is the disability?

   b. How does the disability impact their life?

   c. Anything about that experience that prevents you from being fair and impartial in this case?

(14)    You may hear the testimony of the following people:

   a. [READ WITNESS LISTS].  Does anyone know any of the people I just named?

(15)    Has anyone served as a juror in a prior case?

   a. Civil/criminal;

   b. State/Federal;

   c. Outcome;

   d. How long ago;

   e. Did you serve as the foreperson;

   f. Is there anything about that experience would make you unable to be fair and impartial?

(16)    Have you, any member of your immediate family, or anyone close to you been involved in civil case—as a party, attorney, witness?

      a.      Describe, role, satisfied, fair and impartial?

(17)    Have any of you ever been convicted of a crime, other than parking or traffic tickets?  This does include DUIs.

(18)    Have you or anyone in your immediate family ever studied law or had any legal training or experience?

      a.      Practicing attorney?

          i.      What area of law?

          ii.      If your understanding of the law differs from my instructions to the jury concerning the law, will you follow the law as I give it to you?

(19)    Do any of you have any belief or feeling for or against corporations, companies, or organizations that might prevent you from being a completely fair and impartial juror in this case?

(20)    Do any of you have an opinion about lawsuits in which people sue for money?

      a.      If so, what is your feeling about such lawsuits?

(21)    Do any of you believe that a plaintiff who brings a lawsuit is automatically entitled to recover something just because it brought the lawsuit?

      a.      If so, please explain.

(22)    Do any of you have an issue with compensating someone for an injury you cannot see by looking at them?

(23)    Do any of you believe that the Defendant must have done something wrong or they would not have been sued?

        a.    If so, please explain.

(24)    I will instruct you that in this civil case, Mr. Williams, as the Plaintiff, has the burden of proving his claim by what is called a preponderance of the evidence.  This means that no matter who produces the evidence, when you consider Plaintiff's claim in light of all the facts, you must believe that claim is more likely true than not true.  To put it differently, if you were to put all the evidence in favor of Mr. Williams and all the evidence in favor of Colorado Department of Corrections on opposite sides of the scale, Mr. Williams would have to make the scale tip to his side.  If the scales tip to Mr. Williams's side, your verdict must be for Mr. Williams.  If Mr. Williams fails to meet this burden and the scales tip to CDOC's side, then your verdict must be for CDOC.  Is there anyone here who could not follow that instruction?

(25)    Do any of you have any religious, moral, or philosophical reservations about sitting as a juror in a civil case or passing judgment on another person?

(26)    Do any of you have any pre-existing opinions as to who should prevail in this case?

(27)    Will any of you be unable to separate out any feeling of sympathy or compassion that you may have for either party and decide the case on the facts and the law—without sympathy or compassion and without prejudice to either Party?

(28)    If you serve as jurors in this case, do you understand that you must withhold consideration and judgment in this case until all the evidence is in, until I have instructed you on the applicable law, and until closing arguments have been made; in short, you

must wait, wait, and wait.  Does anyone believe they cannot wait to hear all the evidence and instructions in order to make a decision?

(29)    Is there anyone who could not judge the testimony of all of the witnesses by the same standard?  For example, would anyone give more or less weight to the testimony if someone has been incarcerated?  Or someone who has worked in corrections or law enforcement?

(30)    Do any of you have a problem with the concept that you must follow the law as I instruct you regardless of whether you agree with the law or understand the rationale for it?

(31)    During deliberation, if you have formed an opinion, would it be difficult for you to keep an open mind and listen to the opinions of others?

(32)    If a majority of other jurors reached a different conclusion from you after considering the evidence, would any of you be likely to change your opinion to conform to theirs simply because their opinion was in the majority?

(33)    If you were either the Plaintiff or Defendant, is there any reason at all that you would not want a person in your frame of mind to sit as a juror in this case?

**VOIR DIRE:  INDIVIDUAL QUESTIONS**

Ladies and gentlemen, now there are some questions I will ask each of you individually.  We'll move through the jury pool in order, beginning with _____.  If there is anything you want to mention, but not with everyone listening, raise your hand and it can be arranged for you to talk to me and the lawyers privately.  Please pass the microphone to the next juror when I have completed my questioning of you.  ***(These questions will be displayed on the EMLO.)***

1. Please tell me:

 Name

 Town or county where you live

 Your job

 Education:  level/degrees/institution

 Marital status:  spouses name/employment

 Children:  names/ages/school or occupation

 How long you have lived in Colorado

 Interests:  hobbies/how you spend spare time/what you like to read or watch on TV

2. I also need to inquire about your background.  Have you had a charge pending against you for a crime punishable by imprisonment for more than one year or have been convicted of a crime punishable by imprisonment for more than one year?

 a. If yes, have not had your civil rights restored?

3. Is there anything you think we should know about you before the jury is selected?

14

**PARTIES' VOIR DIRE QUESTIONS**

Now I will give the lawyers for the Parties an opportunity to ask you some follow-up questions.  They can ask the entire panel, or they can ask just a particular person.  These questions are not meant to be intrusive or offensive, but are designed to help seat a fair and impartial jury.  Remember, if there is anything you want to mention, but not with everyone listening, raise your hand and it can be arranged for you to talk to me and the lawyers privately.